Opinion by
 

 Packel, J.,
 

 The appellants seek to overthrow a verdict of $113,-500
 
 [1]
 
 in favor of the appellee, who was struck by part of a tree coming up from the ground as he was operating a bulldozer. The appellants, by contract, had been obligated to clear the ground of any trees.
 

 A real estate development corporation employed the appellants to clear a densely wooded tract and to remove all trees and stumps to predesignated areas. The uncontradicted testimony was that the performance of the work was ended and accepted by July of 1965 and that the ground appeared to be clear of any trees. On November 10, 1965, the plaintiff’s son used mechanized equipment to dig a trench in the tract for the installation of sewer pipes. He piled the excavated dirt along the trench. He testified that he saw no tree in the course of his Avork. As the plaintiff caused the bucket of his bulldozer to take its second scoop of earth along the trench, a tree sprang up, roots first, and struck
 
 *370
 
 him. The testimony was that the top of the tree remained embedded at the side of the trench.
 

 The appellants seek reversal on the ground that there was no evidence of negligence. They make collateral reference to the defenses that the plaintiff was contributorily negligent and that they had been completely off the site for many months. Finally, they claim that the development corporation, an added defendant, should not have been granted a nonsuit.
 

 Cutting through the confusion stemming from the bizarre facts, the liability of the defendants is based upon a failure to clear the land of all trees. It is fair to say that the purpose of such clearance was to prevent injury to property or to persons working on the tract due to the unexpected presence of trees, and the evidence bears this out. The peculiar way in which an injury may result is not material so long as there was a foreseeable probability of injury to one within the ambit of danger.
 
 [2]
 

 We can start with the black letter rule of Restatement 2d of Torts, §385, which provides:
 

 “Persons Creating Artificial Conditions on Land on Behalf of Possessor: Physical Harm Caused After Work has been Accepted
 

 “One who on behalf of the possessor of land erects a structure or creates any other condition thereon is subject to liability to others upon or outside of the land for physical harm caused to them by the dangerous character of the structure or condition after his work has been accepted by the possessor, under the same rules as those determining the liability of one who as
 
 *371
 
 manufacturer or independent contractor makes a chattel for the use of others.” Even more specifically applicable to this case is this provision of Comment c. of §385: “As the liability of a servant or an independent contractor who erects a structure upon land or otherwise changes its physical condition is determined by the same rules as those which determine the liability of a manufacturer of a chattel, it follows that such a servant or contractor who turns over the land with knowledge that his work has made it dangerous in a manner unlikely to be discovered by the possessor is subject to liability both to the possessor, and to those who come upon the land with the consent of the possessor or who are likely to be in its vicinity.” The excellent opinion of Hirt, J., in
 
 Krisovich v. John Booth, Inc.,
 
 181 Pa. Superior Ct. 5, 11, 121 A. 2d 890, 892 (1956), shows the development of the law, quotes with approval §385 of the Restatement and concludes that it is immaterial that the contract had been completed and the work accepted: “Under the rule of the authorities, beginning with Grodstein v. McGivern, supra, now firmly established in our law, the defendant in the present case was chargeable with actionable negligence although he had completed his contract and the work had been accepted by the township. There was credible evidence from which the jury was justified in concluding that the injury resulted from negligent acts or omissions of the defendant, from which he must have foreseen the possibility of injury to a user of the sidewalk, such as this plaintiff.”
 

 An interesting case comparable to the instant case is
 
 Whorton v. T. A. Loving & Co.,
 
 344 F. 2d 739 (4th Cir. 1965), in which the contractor failed to clear a waterway of all beams that were part of an old bridge. After the defendant left the job, a vessel sunk as a result of striking a beam under the water. Just as in
 
 *372
 
 this case, it is contended that the tree could have been brought in by a third party, it was contended there that the beam could have been something other than a part of the old bridge. The court pointed out (344 F. 2d at 742, 743) : “Direct evidence of a fact is not always required. Circumstantial evidence is not only sufficient but may also be more certain, satisfying and persuasive than direct evidence. Michalic v. Cleveland Tankers, Inc., 364 U.S. 325, 330, 81 S. Ct. 6, 5 L. Ed. 2d 20 (1960). In Williamson v. Williams, 137 F. 2d 298, 299 (4 Cir. 1943), this court said: * * inferences arising from admitted circumstances may sometimes be strong enough to outweigh the most positive and direct oral statements.’ Fact finding does not require mathematical certainty. Schulz v. Pennsylvania R. Co., 350 U.S. 523, 526, 76 S. Ct. 608, 100 L. Ed. 668 (1956) . . . The court did not find that the object which sank the Boots was
 
 not
 
 part of the old bridge structure. Any such finding would have required the court to indulge in speculative assumptions that extraordinary circumstances might have existed which, if established, made the only reasonable inference untenable.” In accord with this reasoning is
 
 Schwarts v. Warwick-Phila. Corp.,
 
 424 Pa. 185, 226 A. 2d 484 (1967), in which it was held that the inference as to the source of the dangerous object, asparagus on the dance floor, was a proper question for the jury. Comparable to these cases, the jury in the instant case was warranted in concluding that the tree causing the injury was there because of the manner in which the defendants conducted their work.
 

 Little need be said as to the contention of contributory negligence. There was conflicting evidence as to whether the bulldozer was operated properly and, therefore, it was a proper jury question. Even if the plaintiff’s son had seen or should have seen the tree in dig
 
 *373
 
 ging tlie trench, his negligence would not be attributable to his father. There was evidence that there was no need for a guard on the bulldozer because danger from a tree is not to be anticipated when performance of a contract for the clearance of trees has been completed. A directed verdict on the ground of contributory negligence would have constituted error.
 

 As to the final contention of the appellants that the additional defendant should not have been granted a nonsuit, the evidence is crystal clear that it did not know, or have reason to know, that a tree had been left in the ground.
 

 Judgment affirmed.
 

 [1]
 

 The verdict of the jury was $150,000 but it was reduced by remittitur.
 

 [2]
 

 Interestingly enough, the throwing propensity of a bulldozer was dealt with in
 
 Zilka v. Sanctis Construction, Inc., 409
 
 Pa. 396, 186 A. 2d 897 (1962), cert. den., 374 U.S. 850 (1963), where the majority of the Court concluded that a person 30 to 35 feet away from the bulldozer was not within the ambit of danger.