623 A.2d 873

Max I. GILBERT, D.O. and Roberta P. Gilbert, Administrators of the Estate of David S. Gilbert, Deceased and Max I. Gilbert, D.O. and Roberta P. Gilbert, In Their Own Right, Appellants,

v.

CONSOLIDATED RAIL CORPORATION.

Max I. GILBERT, D.O. and Roberta P. Gilbert, Administrators of the Estate of David S. Gilbert, Deceased and Max I. Gilbert, D.O. and Roberta P. Gilbert, In Their Own Right, Appellants,

v.

SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY.

Commonwealth Court of Pennsylvania.

Argued Nov. 17, 1992.

Decided March 16, 1993.

Reargument Denied May 17, 1993.

Thomas R. Hurd, for appellant.

Janice L. Kolber, for appellee, Consol. Rail Corp.

Before PALLADINO and FRIEDMAN, JJ., and SILVESTRI, Senior Judge.

PALLADINO, Judge.

Appellants, Max and Roberta Gilbert (Gilberts), appeal the order of the Court of Common Pleas of Philadelphia County (trial court) which granted appellee, Consolidated Rail Company's (Conrail) motion for summary judgment. We reverse and remand to the trial court for further proceedings.

The Gilberts filed a wrongful death and survival action against Southeastern Pennsylvania Transportation Authority (SEPTA) and Conrail seeking damages for the death of their eighteen year old son, David, as a result of an accident which occurred on July 23, 1985. Tragically, David was struck by a northbound train while he was crossing the train tracks in an attempt to board a southbound SEPTA train at the Ambler Train Station (station) in Montgomery County. Because of

the design of the station, a southbound passenger who used the parking lot, as David did, was required to walk through a gap in the fence separating the train tracks from the parking area, then cross the northbound and southbound tracks on a wooden walkway between the rails to reach the station. On the day of the accident, the southbound train was already at the station, thereby blocking the wooden walkway and forcing David to cross the tracks outside the designated crossing area.

Conrail had operated this portion of the train system for SEPTA from 1979 through 1983. At the time of the accident, however, the station was owned, operated and possessed by SEPTA. Conrail filed a motion for summary judgment asserting that it could not be held liable for David's accident. Specifically, it asserted that it could not be held responsible for any defects in design, construction or modification of the station because it was no longer in possession or control of the station. Solely for purposes of its motion for summary judgment, Conrail admitted arguendo that it knew or should have known that the fence opening and walkway were dangerous. It further admitted that Conrail employees, either at Conrail's direction or at the direction of SEPTA, designed and built the permissive crossing/walkway at the station and made an opening in the fence at the station.

The trial court granted Conrail's motion for summary judgment, asserting two separate bases for its decision. First, the trial court held that Conrail could not be held liable because (a) the crossing was constructed at the direction of SEPTA; (b) the property was turned over to SEPTA two years before the accident occurred; and (c) that if there was a defect, it was open and obvious. As a second basis for its decision, the trial court held that summary judgment was appropriate because David was more than 50% negligent as a matter of law.

On appeal to this court two issues are presented: (1) whether the trial court erred in concluding that because it was no longer in possession of the property, Conrail could only be held liable for undiscoverable or latent dangers which it may have created while in possession of the station; and (2)

whether the trial court erred in granting summary judgment in favor of Conrail on the basis of David Gilbert's comparative negligence when that issue was not asserted in Conrail's motion, addressed in the parties' briefs, nor raised by the parties at oral argument.

■ Our scope of review of a trial court's order granting summary judgment is limited to determining whether any error of law was committed or whether the trial court abused its discretion. *Lyons v. City of Pittsburgh*, 137 Pa.Commonwealth Ct. 330, 586 A.2d 469, *petition for allowance of appeal denied*, 527 Pa. 670, 593 A.2d 845 (1991). A grant of summary judgment pursuant to Pa.R.C.P. No. 1035(b) is appropriate only if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue as to any material fact and that the moving party is clearly entitled to judgment as a matter of law. *Marks v. Tasman*, 527 Pa. 132, 589 A.2d 205 (1991). In ruling on such a motion we must view the evidence in the light most favorable to the non-moving party. *Id.*

■ As to the first issue, the Gilberts argue that the trial court erred in granting Conrail's motion for summary judgment in that it misstated the law of this commonwealth. Specifically, the Gilberts contend that the trial court erred in concluding as a matter of law that a contractor, out of possession of the property, cannot be held liable to third persons for a dangerous condition it created unless that condition is an undiscoverable or latent defect.

In support of its conclusion, the trial court cites to Comment (c) of Section 385 of the Restatement (Second) of Torts. Although the comment has been adopted by the Pennsylvania courts, when the text of section 385 is read in conjunction with comment (c), it is clear that the trial court's interpretation is unfounded. *See Masciangelo v. Dolente*, 222 Pa. Super 368, 295 A.2d 98 (1972). Section 385 provides as follows:

> One who, on behalf of a possessor of land, erects a structure or creates any other condition thereon is *subject to liability to others upon or outside of the land* for physical harm

caused to them by the dangerous character of the structure or condition after his work has been accepted by the possessor, under the same rules as those determining the liability of one who, as manufacturer or independent contractor, makes chattel for the use of others. (Emphasis added). Comment (c) provides, in pertinent part as follows:

\* \* \*

As the liability of a servant or an independent contractor who erects a structure upon land or otherwise changes its physical condition is determined by the same rules as those which determine the liability of a manufacturer of a chattel, it follows that such a servant or contractor who turns over the land with knowledge that his work has made it dangerous in a manner unlikely to be discovered by the possessor is *subject to liability both to the possessor, and to those who come upon the land with the consent of the possessor or who are likely to be in the vicinity.* (Emphasis added).

The trial court has interpreted comment (c) as imposing the additional requirement that the condition be unlikely to be discovered by the possessor before liability may attach to a contractor out of possession of the property. We disagree. We interpret comment (c) as expanding a contractor's potential liability for a dangerous condition that it created on the property. Section 385 limits liability to third persons, while comment (c) provides for potential liability to third persons and the possessor of the property when the condition may be considered a latent defect.

We further note that the trial court failed to cite any Pennsylvania case law which supports its position, relying instead on an Alaska Supreme Court case which states that "[o]ne who lacks possession and control of property normally should not be held liable for injuries which he is no longer in a position to prevent." *Brock v. Rogers & Babler, Inc.*, 536 P.2d 778, 782 (Alaska, 1975).

Given Conrail's admissions for purposes of its motion and our inability to locate any Pennsylvania case law which supports the trial court's grounds for granting summary judg-

ment, we conclude that the trial court erred in determining that Conrail, as the moving party, was clearly entitled to judgment as a matter of law.

We next turn to the trial court's second basis for granting summary judgment in favor of Conrail. The Gilberts argue that the trial court erred in making the decision to remove the case from a jury based on its determination that David was more than 50% negligent, as a matter of law. We agree.

In its analysis of the comparative negligence issue, the trial court stated that in his rush, David darted out onto the tracks without looking. It further stated that the accident could have easily been avoided had the decedent heeded the warning posted on the caution sign and used common sense. The trial court then concluded that "no reasonable jury could find David Gilbert less than fifty percent negligent given this set of facts." Trial Court Opinion at 4. Therefore, the trial court determined that summary judgment in favor of Conrail was appropriate.

Initially, we note that the trial court concedes that it is a rare situation where it can be said that the plaintiff is more than 50% negligent as a matter of law. *Peair v. Home Association of Enola Legion No. 751,* 287 Pa. Super 400, 430 A.2d 665 (1981) (plaintiff appealed from a judgment entered on a verdict in a negligence case). As mentioned previously, in ruling on a motion for summary judgment we must view the evidence in the light most favorable to the non-moving party. *Marks v. Tasman,* 527 Pa. 132, 589 A.2d 205 (1991). A review of the evidence presented[1] leads us to conclude that the trial court acted prematurely in removing this case from a jury.

At her deposition, Mrs. Roberta Gilbert testified that she had dropped her son off at the SEPTA parking lot and witnessed her son being struck by the train. She further testified that she saw David look to the left and to the right

1. We further note that since this issue was not asserted by Conrail in its motion for summary judgment, nor briefed by the parties, the Gilberts may not have presented the court with all of the evidence available to them on the issue of comparative negligence.

after passing through the opening in the fence. She then testified that David turned right after passing through the opening and was "hugging" the fence as he proceeded to his right. Finally, Mrs. Gilbert testified that David was hit by the train before he began to cross the tracks.

We conclude, contrary to the opinion of the trial court, that this testimony, if believed, could reasonably lead a jury to find that David's actions were not the prime cause of the accident. Therefore, this is not one of the rare situations where it can be said that the plaintiff is more than 50% negligent as a matter of law.

Accordingly, the order of the trial court granting summary judgment in favor of Conrail is reversed and the case remanded for further proceedings.

## ORDER

AND NOW, March 16, 1993, the order of the Court of Common Pleas of Philadelphia County in the above-captioned matter is reversed and the case remanded for further proceedings.

Jurisdiction relinquished.

SILVESTRI, Senior Judge, dissenting.

The majority correctly notes that the trial court gave the following reasons for granting Conrail's motion for summary judgment: 1) the crossing was constructed at the direction of SEPTA; 2) the property was turned over to SEPTA two years before the accident occurred; 3) if there were any defects, they were open and obvious; and 4) David Gilbert was more than 50% negligent as a matter of law.[1] The majority reversed the trial court based, in part, on its determination

1. While the trial court gave several reasons for granting Conrail's motion for summary judgment, we may affirm the decision, even if some of the reasons given by the trial court are incorrect, where the correct basis is clear on the record. *Rhoads v. Lancaster Parking Authority*, 103 Pa.Commonwealth Ct. 303, 520 A.2d 122 (1987); *see also In re Cope's Estate*, 351 Pa. 514, 41 A.2d 617 (1944) (a decree need not be reversed if sustained by one of two alternative grounds adopted by the lower court as a basis of its decision).

that the trial court erroneously interpreted Restatement (Second) of Torts § 385 cmt. c (1977) as imposing the additional requirement that the condition created be unlikely to be discovered by the possessor before liability may attach to a contractor out of possession of the property. I disagree with the majority's conclusion and therefore I respectfully dissent.

The majority notes that it is clear that the trial court's interpretation is unfounded when the text of Section 385 is read in conjunction with comment (c) *citing Masciangelo v. Dolente*, 222 Pa.Superior Ct. 368, 295 A.2d 98 (1972).[2] The majority interprets Section 385 as limiting a contractor's potential liability for a dangerous condition that it created on the property to third persons only, while interpreting comment (c) as providing for potential liability to third persons and the possessor of the property when the condition may be considered a latent defect. The majority then holds "[g]iven Conrail's admissions for purposes of its motion[3] and our inability to locate any Pennsylvania case law which supports the trial court's grounds for granting summary judgment, we conclude that the trial court erred in determining that Conrail, as the moving party, was clearly entitled to judgment as a matter of law." (Footnote added.)

Section 385 provides as follows:

One who on behalf of the possessor of land erects a structure or creates any other condition thereon is subject to liability to others upon or outside of the land for physical harm caused to them by the dangerous character of the structure or condition after his work has been accepted by

---

**2.** In *Masciangelo*, the plaintiff was hurt by a tree root that a contractor had improperly buried rather than removing. The court determined that the jury was warranted in concluding that the tree causing the injury was there because of the manner in which the defendant contractor conducted his work. *Masciangelo* merely stands for the proposition that the inference as to the source of the dangerous object was a proper question for the jury and is not controlling herein.

**3.** Solely for purposes of its motion for summary judgment, Conrail admitted that it knew or should have known that the fence opening and walkway were dangerous. Conrail's admission supports the trial court's conclusion that if there were any defects, they were open and obvious and the admission itself cannot be construed to form the basis of a decision against Conrail.

the possessor, *under the same rules as those determining the liability of one who as manufacturer or independent contractor makes a chattel for the use of others.* (Emphasis added.)

Pursuant to Section 385, Conrail's liability herein is predicated under the same rules as those determining the liability of one who as manufacturer or independent contractor makes a chattel for the use of others. As such, Conrail's liability depends upon the nature of the claim asserted.[4] The essence of the Gilbert's claim, as set forth in the complaint, is that Conrail created a dangerous condition by defectively designing a pedestrian crossing at the Ambler Station; thus, the law of products liability cases applies here.[5]

Generally, in defective design cases, the question is whether the product should have been designed more safely. *Dambacher by Dambacher v. Mallis*, 336 Pa.Superior Ct. 22, 57, 485 A.2d 408, 426 (1984). The reasonableness of the manufacturer's conduct in choosing a particular design is not at issue in determining whether the product is defective. *Sheehan v. Cincinnati Shaper Company*, 382 Pa.Superior Ct. 579, 555 A.2d 1352 (1989).

Comment (c) provides, in pertinent part, as follows:

As the liability of a servant or an independent contractor who erects a structure upon land or otherwise changes its physical condition is determined by the same rules as those which determine the liability of a manufacturer of a chattel, *it follows that such a servant or contractor who turns over the land with knowledge that his work has made it dangerous in a manner unlikely to be discovered by the possessor* is subject to liability both to the possessor, and to those who come upon the land with the consent of the possessor or who are likely to be in the vicinity. (Emphasis added).

---

4. The liability of a manufacturer of a chattel can be asserted under four different theories: negligence, contract, warranty (contractual or implied), or products liability.

5. Products liability cases involve three broad categories: manufacturing defects, failure to warn, and dangerous design.

The majority completely overlooks the language of comment (c) which mandates that liability will only attach to Conrail if it turned over the station to SEPTA with the knowledge that its work had made it "dangerous in a manner unlikely to be discovered *by the possessor.*" (Emphasis added.) The phrase "unlikely to be discovered" implies that the condition be latent and therefore not open or obvious in order for liability to attach.

Although the question of whether a danger was known [6] or obvious as compared to being latent is usually a question of fact for the jury, the question may be decided by the court where reasonable minds could not differ as to the conclusion. *See Carrender v. Fitterer,* 503 Pa. 178, 469 A.2d 120 (1983). A danger is deemed to be "obvious" when both the condition and the risk are apparent to and would be recognized by a reasonable man exercising normal perception, intelligence, and judgment. *Id.* The dangerous condition alleged in the complaint, the configuration of the permissive crossing and the opening to the parking lot, were certainly obvious to SEPTA. The complaint alleges that Conrail created an unreasonably dangerous condition which commuters using the station and the pedestrian crossing were not likely to recognize. No where in the complaint or otherwise is it ever alleged that Conrail made the land dangerous in a manner unlikely to be discovered by SEPTA.

A review of the record, in particular photographs of the station, walkway, fence and parking lot (R.R. 41a–42a), reveals that the wooden crossing and opening to the parking lot were obvious for all to see and a dangerous condition likely to be discovered by the possessor, SEPTA. In particular, the photographs show two signs located near the opening in the fence adjacent to the parking lot which read "CAUTION STOP LOOK AND LISTEN" and "CAUTION Look Before Crossing." (R.R. 41a–42a.) The aforementioned signs are evidence that the danger, if any, was clearly obvious and the presence

---

**6.** For a danger to be "known" it must not only be known to exist but must also be recognized that it is dangerous and the probability and gravity of the threatened harm must be appreciated. *See* Restatement (Second) of Torts § 343A cmt. b (1977).

of the signs is evidence that SEPTA was aware of the danger.[7] Since reasonable minds could not differ as to the conclusion that the danger was obvious and not unlikely to be discovered by SEPTA, the trial court properly determined, as a matter of law, that Conrail cannot be liable to the Gilberts.

7. Whether the signs were erected by Conrail or SEPTA is of no consequence since under either scenario the dangerous condition was obvious and known to SEPTA.