

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-14-2006

# Bouchard v. CSX Trans Inc

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-4581

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Bouchard v. CSX Trans Inc" (2006). *2006 Decisions.* Paper 893.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/893

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 05-4581

———————

VILMA BOUCHARD,
Administratrix of the Estate of
Samantha A. Bouchard,
Appellant

v.

CSX TRANSPORTATION, INC.

———————

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 04-cv-01798)
District Judge: Honorable Arthur J. Schwab

———————

Argued May 18, 2006

Before:  RENDELL and VAN ANTWERPEN, Circuit Judges,
and ACKERMAN*, District Judge.

(Filed:  June 14, 2006)

———————

James C. Heneghan     **[ARGUED]**
Feldstein, Grinberg, Stein & McKee
428 Boulevard of the Allies
Pittsburgh, PA 15219
    *Counsel for Appellant*

———————

* Honorable Harold A. Ackerman, Senior District Judge for the District of New Jersey,
sitting by designation.

John E. Wall   **[ARGUED]**
Scott D. Clements
Dickie, McCamey & Chilcote
Two PPG Place, Suite 400
Pittsburgh, PA 15222-5402
   *Counsel for Appellee*

_____

OPINION OF THE COURT

_____

RENDELL, <u>Circuit Judge</u>.

Samantha Bouchard was killed when the back tire of her bicycle was struck by a train as she rode across the Juniper Street railroad crossing in Versailles Borough, Allegheny County, Pennsylvania. Vilma Bouchard,[1] Samantha's mother and the administratrix of her estate, brought this wrongful death and survival negligence action against CSX Transportation, Inc., the owner and operator of the train. The United States District Court for the Western District of Pennsylvania granted CSX's motion for summary judgment, holding that CSX was not negligent and that Samantha's negligence exceeded 50% as a matter of Pennsylvania law. Bouchard now appeals. We will reverse.[2]

_____

[1]To avoid confusion, we will refer to the decedent, Samantha Bouchard, as "Samantha" and to her mother, the plaintiff in this case, as "Bouchard."

[2]The District Court had diversity jurisdiction pursuant to 28 U.S.C. § 1332. Our jurisdiction to review the District Court's final order granting summary judgment to CSX arises under 28 U.S.C. § 1291.

# I.

The parties in this case have developed an extensive factual record, the bulk of which is set forth in the District Court's opinion. *See Bouchard v. CSX Transp., Inc.*, No. 04cv1798, 2005 WL 2266593, at *1-5 (W.D. Pa. Sept. 16, 2005). We provide only a brief overview of those facts here.

Samantha, who was riding her bicycle northward on Juniper Street, stopped on the south side of the Juniper Street railroad crossing at approximately 3:15 in the afternoon on May 25, 2003. The Juniper Street crossing is equipped with red light signals, a sign that says "3 tracks" and "cross bucks," an X-shaped sign that reads "Railroad Crossing." A CSX train was traveling eastbound, from Samantha's left to her right, on the track closest to Samantha. When Robert Dodds, who was driving a pickup truck northward on Juniper Street, arrived at the crossing, Samantha was stopped on the right edge of the road and the eastbound train was in the crossing. The lights on the south side of the crossing were operating and blinking red.

Samantha and Dodds waited between five and ten minutes for the eastbound train to pass through the crossing. After the train had cleared the crossing, Samantha looked to her left and to her right and pedaled into the crossing. As she was riding through the crossing, the right front of a second, westbound CSX train (traveling from right to left) struck the back tire of Samantha's bicycle. Samantha died as a result of the accident.

Dodds remained stopped in his truck at the crossing as Samantha pedaled through.

3

He never saw the warning lights stop flashing, but testified in a deposition that he did not look at them again after he first approached the crossing. Jeffrey Taylor, the engineer and operator of the westbound train, testified that he noticed that the lights on the north side of the crossing (which faced south, towards Samantha and Dodds) were flashing as he passed through the intersection.

The train's speed did not exceed the federal limit of 40 miles per hour as it traveled through the Juniper Street crossing. CSX claims that Taylor activated the appropriate horn sequence (two longs, a short and a long) and the bell 1,000 feet (about 15-20 seconds) before the train reached the Juniper Street crossing, and that Taylor was blowing the last long of the horn sequence when impact occurred. Data from the event recorder on the westbound train also indicates that Taylor blew the horn and rang the bell before he applied the train's emergency brake. Bouchard disputes this version of events, citing Dodds's deposition testimony that he did not hear the train's horn or bell until after the train hit Samantha.

The parties dispute whether Taylor and Brian Frazee, the westbound train's conductor, were qualified to operate the train. CSX claims that Taylor was certified as a locomotive engineer beginning in March 1999, and that his certification was valid on the date of the accident. It claims that Frazee was qualified as a conductor on the date of the accident and was up to date on his operating rules test. Bouchard claims that Taylor was not certified to operate the train because he had not retaken the operating rules test in

4

2003 as required, and that Frazee was not up to date on his operating rules test or certified for the year of the accident.

Bouchard sued CSX in the Court of Common Pleas of Allegheny County, asserting wrongful death and survival claims based on CSX's "negligence, carelessness, gross negligence and reckless conduct" arising out of, *inter alia*, CSX's failure to install proper warning devices at the crossing, failure to properly warn that the westbound train was approaching the Juniper Street crossing, removal of safety gates and other warning devices from the crossing and failure to maintain a safe and reasonable speed. *See* Pl.'s Compl. 5-7. After the case was removed to the District Court for the Western District of Pennsylvania, CSX moved for summary judgment. In response, Bouchard did not contest CSX's assertion that it was entitled to judgment on several of the negligence theories she had asserted in her complaint. The District Court granted CSX's motion as to the remaining negligence theories because it concluded that CSX was not negligent as a matter of law and that Samantha was "contributorily negligent" as a matter of law.[3]

## II.

Our review of a district court's decision on summary judgment is plenary. *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir. 2000). We must determine

---

[3]Judge Schwab acknowledged that Pennsylvania abolished contributory negligence, in favor of the partial comparative negligence scheme set forth at 42 Pa. Cons. Stat. Ann. § 7102, in 1976. He continued to use the term "contributory negligence" in his opinion for "ease of reading," but stated that his analysis was "based upon the standards of comparative negligence adopted by the Pennsylvania courts." *Bouchard*, 2005 WL 2266593, at *6 n.3.

whether the record, when viewed in the light most favorable to the non-moving party, shows that there are no genuine issues of material fact, and that the moving party is entitled to judgment as a matter of law. *Id.* (citing Fed. R. Civ. P. 56(c)).

**III.**

**A.     Samantha's Negligence**

Preliminarily, the District Court found that Samantha was contributorily negligent as a matter of law because she failed to stop, look and listen before crossing the railroad tracks. A traveler's failure to stop, look and listen before crossing a railroad track ordinarily "constitutes contributory negligence as a matter of law" in Pennsylvania. *Tomasek v. Monongahela Ry. Co.*, 235 A.2d 359, 362 (Pa. 1967) (citations omitted). The traveler's obligation to stop, look and listen continues as he crosses the tracks. *Id.* Because contributory or comparative negligence is a defense, CSX bears the burden of proving that Samantha did not stop, look or listen. *See Marks v. Swayne*, 701 A.2d 224, 226 (Pa. 1997).

The parties agree that Samantha stopped, for between five and ten minutes, at the crossing. The only evidence in the record as to what she did before crossing thereafter, in the form of Dodds's testimony, indicates that she looked from her left to her right. That Dodds used the word "glance" to describe the *way* that she looked does not undermine this basic fact. In addition, although we can't be sure whether Samantha *listened* for the train, Dodds testified that he did not hear the westbound train's horn or bell until after

6

impact, which at least raises an inference that Samantha might not have heard the train, even if she listened for it. Given CSX's burden to establish that Samantha did *not* stop, look and listen, and Rule 56(c)'s directive to view the facts in the light most favorable to the non-moving party, we conclude that CSX is not entitled to judgment as a matter of law as to Samantha's negligence for failing to stop, look and listen before she crossed the tracks. *Cf. Baker v. Pa. R.R. Co.*, 85 A.2d 416, 419 (Pa. 1952) ("[W]here a traveller [sic] stops, looks and listens before entering a grade crossing and, neither seeing nor hearing anything approaching on the tracks, proceeds and is thereafter struck by a train on a track beyond the first, the question of his contributory negligence is for the jury.").

However, our scrutiny of Samantha's actions does not end there. In addition to the duty to stop, look and listen, Pennsylvania law also imposes on travelers the duties to remain stopped at a railroad crossing until the signal lights stop flashing, *see Burkman v. Anderson*, 188 A. 287, 288-89 (Pa. 1936), and to wait until a temporary obstruction, such as a passing train, clears before crossing the tracks, *see McCartney v. Pa. R.R. Co.*, 161 A. 63, 64 (Pa. 1932) (plaintiff's failure to wait for the smoke from westbound freight trains to clear before proceeding across a railroad crossing barred his recovery under contributory negligence principles); *Nolder v. Pa. R.R. Co.*, 123 A. 507, 508 (Pa. 1924) (plaintiff who proceeded across railroad tracks before receding train had sufficiently cleared crossing to enable him to see other tracks was contributorily negligent).

The record demonstrates conclusively that Samantha failed to satisfy these

7

obligations.  First, Samantha negligently proceeded into the crossing as the red lights were still flashing.  Taylor testified that the lights on the north side of the crossing, which were facing Bouchard, were active and flashing when the accident occurred.  Dodds's testimony, that he did not notice whether the lights were flashing when Samantha entered the crossing, does not contradict this point.  Second, the facts as found by the District Court establish that the eastbound train had only cleared the crossing by about fifty feet when Samantha began to pedal across; Bouchard does not challenge this finding on appeal.  And Dodds testified that the passing eastbound train obscured his and Samantha's view of the tracks beyond the first.  Thus, we conclude that Samantha was also negligent in failing to wait until she could see the other tracks well enough to make an informed decision as to whether it was safe to cross.  *Cf. Nolder*, 123 A. at 508 (holding that plaintiff who waited until receding train was 100 feet away should have waited for it to clear an additional 100 feet before crossing).

However, our finding that Samantha was negligent as a matter of law does not resolve the question of whether Bouchard's claims should be barred based on principles of *comparative* negligence.  Under Pennsylvania's comparative negligence statute, a plaintiff's negligence bars recovery only when it is greater than that of the defendant.  42 Pa. Cons. Stat. Ann. § 7102.  Comparative negligence is ordinarily an issue for the jury; it is a "rare situation where it can be said that the plaintiff is more than 50% negligent as a matter of law."  *Gilbert v. Consol. Rail Corp.*, 623 A.2d 873, 876 (Pa. Commw. Ct.

8

1993).

The District Court relied on *Gilbert v. Conrail*, 14 Pa. D. & C. 4th 147 (Pa. Ct. Com. Pl. 1992), to hold that Samantha's negligence precluded recovery. *See Bouchard*, 2005 WL 2266593, at *9. However, that case is no longer good law; the Commonwealth Court overturned *Gilbert*'s comparative negligence ruling on appeal in 1993. *Gilbert*, 623 A.2d at 876. And the case that CSX urges us to follow to uphold the District Court's ruling, *Hillerman v. PennDOT*, 595 A.2d 204 (Pa. Commw. Ct. 1991), is not on point.

In that case, which involved a pedestrian who was struck by a car while crossing the street against the light, the court determined that the plaintiff was more than 50% negligent as a matter of law as against the Pennsylvania Department of Transportation and the City of Philadelphia, which were responsible for maintaining the signals at the crosswalk. Its ruling was based in part on the fact that plaintiff testified that she did not look before walking into traffic and in part on the fact that the plaintiff had not named the driver of the car that struck her as a defendant in the suit. *See id.* at 205-06. In this case, by contrast, there is evidence that Samantha did look before crossing the tracks. *See supra*. Moreover, unlike the *Hillerman* defendants, CSX is liable for its actions in operating the train as well as for its actions in maintaining the signals at the Juniper Street crossing. Thus, the possibility remains, after *Hillerman*, that CSX's negligence in operating the train, or the combination of its negligence in failing to properly maintain warning signals at the crossing and in operating the train, exceeded Samantha's.

CSX has not cited, and we have not found, any other authority that supports the

9

District Court's conclusion that Samantha was more than 50% negligent *as a matter of law*. Following Pennsylvania law, we will vacate the District Court's grant of summary judgment to CSX on this basis and leave the issue of comparative negligence for the jury to decide on remand.

**B.      CSX's Negligence**

In addition to finding that Samantha was more than 50% negligent, the District Court concluded that CSX was not negligent as a matter of law. As to all but one of Bouchard's claims, we disagree.

**1.      Failure to Provide Sufficient Warning Devices**

Under Pennsylvania law, a railroad owes a duty to adopt a "reasonably safe and effective mode, commensurate with the danger at the crossing," of warning travelers of an approaching train. *McGlinchey v. Baker*, 356 F. Supp. 1134, 1142 (E.D. Pa. 1973). A plaintiff need not demonstrate "unusual, peculiar and extra hazardous conditions," *Bouchard*, 2005 WL 2266593, at *6 (citing *Yolton v. Pa. R.R. Co.*, 84 A.2d 501 (Pa. 1951)), to prove that a railroad should have provided additional warning signals.[4] Rather, the issue is

---

[4]The rule that the District Court applied, that plaintiff bears the burden "to show unusual, peculiar and extra hazardous conditions at the crossing for the railroad to be charged with the duty of providing additional warning devices," *Bouchard*, 2005 WL 2266593, at *6, does not fit the facts of this case. That rule applies in cases where the injured party ran into a train that was *already in the crossing*. *See Yolton*, 84 A.2d at 503; *Wink v. W. Md. Ry. Co.*, 176 A. 760, 761-62 (Pa. Super. Ct. 1935). It does not apply where, as here, the injured party was struck by an approaching train.

10

whether, under the circumstances described, taking into consideration the physical conditions of the crossing, the extent of its use by the public, the nature of the surroundings, the speed of the train, and other matters tending to show exceptional dangers incident to the particular locality, [the railroad] performed [its] duty toward persons using the highway.

*Cummings v. Pa. R.R. Co.*, 151 A. 590, 591 (Pa. 1930). *See also Strozyk v. Norfolk So. Corp.*, 358 F.3d 268, 277 (3d Cir. 2004) (railroad's duty of care is "heavily fact-contingent, with all conditions being relevant"). Although "[t]he general rule is that there is no common-law duty on the part of a railroad company to place . . . safety gates at a crossing," the fact finder may consider the absence of gates "in determining whether or not under all the circumstances the railroad was negligent at the time the accident happened." *Cummings*, 151 A. at 591. The question of whether a railroad has fulfilled this duty "present[s] a classic jury question," such that a trial court, in most cases, is "unjustified in removing any aspect of the case from the jury's consideration." *McGlinchey*, 356 F. Supp. at 1139.

Bouchard has introduced more than enough evidence to reach the jury on this issue. The record before the District Court included an expert report that opined:

> The Juniper Street crossing fits several specific generally accepted criteria for the installation of gates, including its status as a multiple-track crossing subject to sight obstructions caused by adjacent structures and trains on other tracks, a crossing over which hazardous materials vehicles operate, a bike path crosses, and a crossing with a high number of daily train movements.

Bouchard also proffered the testimony of two witnesses that the Juniper Street crossing was guarded by gates at some point, probably in the late 1970s or early 1980s. This evidence, which the District Court improperly disregarded, at least raises a genuine issue

11

of material fact as to whether CSX fulfilled its obligation to provide a "reasonably safe and effective mode" of warning travelers of the danger of approaching trains at the Juniper Street crossing.

### 2. Failure to Sound the Horn

The same "standard of ordinary care under the circumstances" that applies to the railroad's duty to maintain a railroad crossing also applies to its operation of the train. *McGlinchey*, 356 F. Supp. at 1143. The evidence in this case presents a genuine issue of material fact as to whether Taylor provided adequate warning of the train's approach before the train struck Samantha. Dodds testified that he did not hear the train's horn sounding, its bell ringing or its whistle blowing before impact. Pennsylvania case law clearly provides that testimony from a witness who was at the scene to the effect that he did not hear a train's horn is competent evidence that no horn was blown. *See Fallon v. Penn. Cent. Transp. Co.*, 279 A.2d 164, 167-68 (Pa. 1971). While this evidence may not be as compelling as the conflicting evidence presented by CSX from the train's data recorder log, the weight of the evidence is for the jury, and not the District Judge, to assess.

Moreover, Bouchard supplied the District Court with an expert report that noted that the data from the train's event recorder log showed that the whistle blasts did not comply with CSX's internal regulations. The whistle blasts began only 848 feet from the likely point of impact, not at the whistle post (located 1,932 feet away) as required. The crew also failed to initiate the series of short and long blasts that CSX regulations

12

required when it became clear that they would pass the end of an oncoming train in close proximity to a public grade crossing. The expert opined that, if the train personnel had complied with CSX's internal regulations, "Samantha Bouchard would have definitely heard the oncoming train over the noise made by the passing auto rack train, and would be alive today." In light of Dodds's testimony and the expert report, which CSX has not contradicted, we conclude that the District Court erred in removing the issue of CSX's negligence in operating the train from the jury.

### 3. Failure to Maintain Proper Personnel

The District Court granted CSX summary judgment on Bouchard's claim that CSX failed to maintain proper personnel to operate the train because it concluded that Bouchard had not established that CSX's failure to ensure that the train's engineer and conductor remained properly certified was a proximate cause of Samantha's death. *Bouchard*, 2005 WL 2266593, at *8. This conclusion ignores evidence in the record, in the form of an expert report submitted by Bouchard, that opines, "the crew's violation of the CSX operating rules, lack of reasonable care, and their insufficient training and experience was the cause of the accident." The District Court's grant of summary judgment on this basis was thus improper

### 4. Excessive Speed

Finally, the District Court granted summary judgment to CSX on Bouchard's excessive speed claim because it found that the claim was preempted by federal law pursuant to *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658 (1993). Bouchard's attempts

13

to resurrect this claim on appeal by arguing that it falls within Easterwood's "specific, individual hazard" exception, *see id.* at 675 n. 15, are unavailing. First, the hazard that Bouchard cites in this case–the obstruction of a traveler's view by a passing train–is not unique or particularly local and, thus, does not qualify as a "specific, individual hazard." *See, e.g.*, *Shaup v. Frederickson*, No. Civ. A. 97-7260, 1998 WL 726650, at *11 (E.D. Pa. Oct. 16, 1998) ("[C]onditions which can and do occur at many intersections, such as multiple tracks and rail cars that obstruct view, are not unique, local conditions or specific, individual hazards."). Second, and equally importantly, the "specific, individual hazard" exception applies only where the plaintiff asserts that the defendant was negligent in failing to slow or stop a train. *See Easterwood*, 507 U.S. at 675 n. 15. Bouchard's claim, by contrast, is based on an *excessive speed* theory. *See* Pl.'s Compl. 6, ¶ 26(g); (asserting that CSX was negligent in "failing to maintain a safe and reasonable speed of its train, but rather proceeding at an excessive rate of speed under the circumstances"). The Supreme Court's decision in *Easterwood* specifically holds that the Federal Railroad Safety Act preempts such claims. *See* 507 U.S. at 675.

## IV.

For the foregoing reasons, we will affirm the District Court's order granting summary judgment to CSX on Bouchard's excessive speed claim, but reverse its order as to Bouchard's remaining claims and remand for further proceedings consistent with this opinion.

14