33 A.3d 594

Paula (Livingston) GRESIK, Individually and as Administratrix of the Estate of Gerald Livingston, Jr., Appellant

v.

PA PARTNERS, L.P., Appellee.

Joseph L. Beltowski and Karen M. Beltowski, his Wife, Appellants

v.

PA Partners, L.P., Appellee.

Supreme Court of Pennsylvania.

Argued April 12, 2011.

Decided Dec. 1, 2011.

James M. Jacobs, Jr., Yelovich & Flower, for Joseph L. Beltowski and Karen M. Beltowski.

Frederick William Bode, Dickie, McCarney & Chilcote, P.C., Pittsburgh, James Burleigh Courtney, Courtney and Courtney, Somerset, Michael Stanley Kaczmarek, Dickie, McCarney & Chilcote, P.C., Barbara S. Magen, Teresa Ficken Sachs, Post & Schell, P.C., Philadelphia, Vincent Scaglione Jr., Dickie, McCarney & Chilcote, P.C., Pittsburgh, for PA Partners, L.P.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, JJ.

## OPINION

Justice SAYLOR.

This case involves whether the Superior Court properly interpreted and applied Section 385 of the Second Restatement of Torts, which relates to the liability of a contractor or employee who creates a dangerous condition on land on behalf of the land's possessor.

According to the plaintiffs' allegations, between 1983 and 1988, Appellee, PA Partners, L.P., possessed and operated a steel plant in Hollsopple, Somerset County.[1] In 1984, PA Partners adapted the plant to produce steel ingots by, *inter alia*, thinning the firebrick lining on the sides and bottom of the plant's electric furnaces and increasing the voltage used to

---

1. The factual background is drawn from the complaints and developed in the light most favorable to the plaintiffs. *See generally White Deer Twp. v. Napp*, 590 Pa. 300, 302 n. 2, 912 A.2d 781, 783 n. 2 (2006).

melt the materials placed inside the furnaces. After these modifications, the plant experienced multiple "burn-through" incidents, meaning that molten steel burned through the fire-brick lining and shell wall of a furnace. In each instance, the molten steel escaping from the furnace ruptured nearby water lines, causing a steam explosion. The explosion, in turn, caused steam and debris to spew onto the pouring platform where furnace operators were working. During one such incident, a worker escaped from the pouring platform via an "access drawbridge" connecting the platform with other parts of the facility. PA Partners eventually removed the draw-bridge to improve operation of the plant's overhead cranes. It did not, however, take steps either to provide an alternate means of escape from the platform, or to shield the water lines from damage in the event of a burn-through.

In late 1988, PA Partners sold the steel mill to First Mississippi Steel, Inc. ("FMS"), in a "turn-key" transaction— *i.e.*, FMS retained all of the facility's personnel, including its management, and operated it in the same manner as before. Notably, the mill's physical plant was not substantially altered, meaning that the access drawbridge was not replaced and the water lines remained unshielded.

Nearly six years later, in June 1994, Gerald Livingston and Joseph Beltowski, employees of FMS, were operating one of the furnaces when a burn-through and a series of steam explosions occurred. During the incident, hot steel fragments and parts of the plant structure fell onto the pouring platform and struck Livingston and Beltowski. Livingston was fatally injured and died three days later. Beltowski was seriously injured, but survived with scarring and disfigurement.

Appellants, Paula Jean Livingston (now Paula Livingston Gresik) and Joseph and Karen Beltowski, filed civil actions against numerous parties, including PA Partners, for damages arising out of the accident. The complaints sought relief primarily under theories relating to liability imposed upon the vendor of property, as well as contractors and engineers who

create a dangerous condition on land.[2] Several years of litigation ensued, and the common pleas court dismissed some of the claims on preliminary objections in the nature of a demurrer. Eventually, PA Partners remained as the only defendant in the suit. After further pleadings and discovery, the court granted PA Partners' motion for summary judgment on the sole remaining cause of action.[3]

Appellants appealed to the Superior Court, with PA Partners as the only named appellee. Appellants challenged, among other things, the common pleas court's order sustain-

2. The alleged dangerous conditions pertained to the manner in which the plant was modified prior to the sale, as described above. Appellants also alleged that the defendants were negligent as to several material omissions, including the failure to shield the water lines, construct a protective structure near the pouring station, set in place a "usage life policy" for the furnaces requiring their periodic replacement or refurbishment, establish safety procedures for furnace operators to follow in the event of an impending burn-through, require workers to wear aluminized burn-resistant suits, or install a backup electrical system to ensure that lighting and safety equipment continued to operate in the event an explosion disabled the main electrical system. *See* Beltowski Complaint at ¶¶ 15–23, *reproduced in* R.R. 40–42; Livingston Complaint at ¶¶ 15–23, *reproduced in* R.R. 59–61. Appellants additionally faulted the defendants for not warning FMS of the steel plant's deficiencies or the need to promote safer working conditions, an omission to which they attached special significance in view of FMS's alleged lack of experience in steel manufacturing. *See* Beltowski Complaint at ¶¶ 27–29, *reproduced in* R.R. 43–44; Livingston Complaint at ¶¶ 27–29, *reproduced in* R.R. 62–63.

Appellants did not name FMS as a defendant, presumably because of the exclusive nature of the redress available under the Workers' Compensation Act. *See* 77 P.S. § 481; *Kuney v. PMA Ins. Co.*, 525 Pa. 171, 175–76, 578 A.2d 1285, 1287 (1990).

3. The cause of action on which summary judgment was granted was asserted pursuant to Section 353 of the Second Restatement. *See* RESTATEMENT (SECOND) TORTS § 353 (1965) (relating to undisclosed dangerous conditions known to a vendor). The common pleas court observed that one prerequisite to Section 353 liability is that the seller is aware, or should realize, that the buyer will not discover the dangerous condition or understand its risk. The court held that this condition was not met because: (1) PA Partners was aware that the plant's workforce, including its senior management, would remain in place after the sale; and (2) under agency law precepts, the knowledge of agents (here, the plant's employees) may be imputed to the principal (here, FMS). *See Beltowski v. PA Partners, L.P.*, Nos. 325 & 326 Civil 1996, slip op. at 5–15, 2008 WL 7626265 (C.P.Somerset, Aug. 1, 2008). Appellants' Section 353 claim is not presently at issue.

ing PA Partners' preliminary objections in the nature of a demurrer. Appellants highlighted that a demurrer may only be sustained when it is clear that there can be no recovery under any theory based on the facts alleged. In this respect, they maintained that the common pleas court had failed to recognize that PA Partners could be held liable under a theory of negligent construction described in Section 385 of the Second Restatement of Torts, as follows:

> One who on behalf of the possessor of land erects a structure or creates any other condition thereon is subject to liability to others upon or outside of the land for physical harm caused to them by the dangerous character of the structure or condition after his work has been accepted by the possessor, under the same rules as those determining the liability of one who as manufacturer or independent contractor makes a chattel for the use of others.

RESTATEMENT (SECOND) TORTS § 385 (1965). Appellants contended that the removal of the access drawbridge created a danger, and hence, could have been found to constitute negligent construction, supporting liability under Section 385.

A unanimous three-judge panel of the Superior Court affirmed. See Gresik v. PA Partners, L.P., 989 A.2d 344 (Pa.Super.2009). The court held that Appellants had failed, in their complaints, to set forth a legally sufficient cause of action under Section 385. In reaching this holding, the court initially observed that, at the time of the alleged negligence, PA Partners was the possessor of the property, and that PA Partners eventually became the property's vendor. The court found these factors significant because Section 385 appears in a portion of the restatement entitled, "Liability of Persons Other Than a Possessor, Vendor, or Lessor." Id. at 348 (quoting RESTATEMENT (SECOND) TORTS, Division 2, Chapter 13, Topic 8 (1965)) (emphasis added by Superior Court). Nevertheless, the Superior Court did not rest its disposition on that basis. Rather, it stated that Appellants' Section 385 claim failed because the asserted dangerous conditions were not hidden, but were "well known to all the relevant parties." Id. at 351.

In employing this reasoning, the Superior Court referred to the portion of Section 385 that incorporates by reference the rules for determining the liability of a manufacturer of chattels. The court made express reference to Section 388 of the Restatement, which relates to chattels known to be dangerous for their intended use, and provides that a supplier of such a chattel may only be held liable if the supplier "has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition." *Id.* at 350 (quoting RESTATEMENT (SECOND) TORTS § 388 (1965)). The court additionally relied on an official comment to Section 385, which states, in part:

A manufacturer of a chattel who puts it upon the market knowing it to be dangerous *and having no reason to expect that those who use it will realize its actual condition* is liable for physical harm caused by its use (see § 394). As the liability of a servant or an independent contractor who erects a structure upon land or otherwise changes its physical condition is determined by the same rules as those which determine the liability of a manufacturer of a chattel, it follows that such a servant or contractor who turns over the land *with knowledge that his work has made it dangerous in a manner unlikely to be discovered by the possessor* is subject to liability both to the possessor, and to those who come upon the land with the consent of the possessor or who are likely to be in its vicinity.

*Id.* (quoting RESTATEMENT (SECOND) TORTS § 385 cmt. c (1965)) (emphasis added by Superior Court). Thus, based on Section 388, as well as the two emphasized phrases above, the Superior Court held that, "as a precondition for establishing liability under Section 385, a plaintiff must show that the danger was one unlikely to be discovered by the possessor or those who come upon the land with the possessor's consent." *Id.* at 350–51. In this respect, the court adopted the dissenting position in *Gilbert v. Consolidated Rail Corp.*, 154 Pa.Cmwlth. 249, 623 A.2d 873 (1993), which expressed the view that Section 385 only imposes liability upon a contractor where the dangerous condition at issue is latent, and not when it is "open and

obvious." *Gilbert,* 154 Pa.Cmwlth. at 258, 623 A.2d at 877–78 (Silvestri, S.J., dissenting), *adopted in Gresik,* 989 A.2d at 350.

This Court granted further review, limited to the question of whether the Superior Court erred in its interpretation and application of Section 385 of the Second Restatement of Torts. *See Gresik v. PA Partners, L.P.,* 606 Pa. 232, 996 A.2d 1065 (2010) (per curiam); *Beltowski v. PA Partners, L.P.,* 606 Pa. 233, 996 A.2d 1066 (2010) (per curiam).

Appellants primarily take issue with the Superior Court's decision to engraft what they refer to as an "unlikelihood of discovery" requirement onto Section 385. They maintain that, in doing so, the Superior Court elevated an official comment over the plain text of the provision, and additionally failed to follow the majority position in the *Gilbert* case, which express-ly declined to interpret Comment. c as encompassing such a prerequisite. *See Gilbert,* 154 Pa.Cmwlth. at 253, 623 A.2d at 875. Appellants contend further that, even if this Court ultimately agrees with the Superior Court's construction of Section 385, Appellants should be given an opportunity to amend their complaints to aver facts satisfying the new pre-requisite. *See* Brief for Appellants at 14.

In the alternative, Appellants posit that, since employees of PA Partners removed the access drawbridge—and all such employees were hired *en masse* by FMS—those same employ-ees were unlikely to replace the drawbridge in the post-sale timeframe inasmuch as they were aware that its removal was accomplished to enhance production. Based on this predicate, Appellants make two distinct arguments. They state that the allegations in their complaints, when read in their favor, demonstrate that the dangerous condition was unlikely to be "discovered" by FMS. Their theory is that, if the workers were not "smart enough" to realize the danger of removing the access drawbridge in the pre-sale timeframe notwithstand-ing that a worker had used it to escape injury, those same employees were unlikely to become any "smarter" (or more safety-conscious) so as to "discover" the defect in the post-sale

timeframe. Brief for Appellants at 18–19.[4] Separately, Appellants proffer that the circumstances are germane to Section 389 of the Restatement, which imposes liability on a supplier of a chattel that is unlikely to be made safe for use even after the supplier informs the intended user of its dangerous character. *See* RESTATEMENT (SECOND) TORTS § 389 (1965). In essence, Appellants submit that, if it was appropriate for the Superior Court to consult Section 388 for guidance (as described above), the court should also have consulted Section 389 for additional guidance. *See* Brief for Appellants at 16–17.[5]

PA Partners highlights the Superior Court's initial observation that Section 385 only applies to persons other than a possessor, vendor, or lessor of property, and thus, does not apply to PA Partners. *See* Brief for Appellee at 15–16. PA Partners states that Section 385 contemplates the involvement of two distinct entities: a possessor, vendor, or lessor of land, and a person performing work at the former's behest. PA Partners argues that this is reflected not only in the provision's text, but in its title ("Persons Creating Artificial Conditions On Land On Behalf Of Possessor: Physical Harm Caused After Work Has Been Accepted"), and is made explicit in a portion of Comment. *c* that states:

> As to the effect of the employer's knowledge of the dangerous character of the structure or condition *when he accepts it from the servant or contractor, see* § 388, Comment. *n.*

4. In a somewhat contradictory portion of this argument, Appellants assert that their averments show that PA Partners' employees who acted in a managerial capacity were aware of the potential for burn-through incidents and the usefulness of the access drawbridge in preventing injury, and that those same managers remained in place after the sale to FMS. *See id.* at 18.

5. Notably, Section 388 and 389 both refer to chattel "suppliers," rather than manufacturers or independent contractors, as referenced in the text of Section 385. Moreover, Comment. a to Section 385 identifies the "rules determining the liability as one who as manufacturer or independent contractor makes a chattel for the use of others," RESTATEMENT (SECOND) TORTS § 385 (1965), by reference to Sections 394–398, 403, and 404, but not Section 388 or 389. *See id.* cmt. a.

RESTATEMENT (SECOND) TORTS § 385 cmt. c (1965) (emphasis added). In PA Partners' view, Section 385 can only apply to the latter, *i.e.*, the servant or contractor, and, hence, cannot apply to a possessor or vendor such as PA Partners.

PA Partners also contends that, even if Section 385 would otherwise apply in this case, the Superior Court correctly found that liability was absent because all of the employees who worked at the plant for PA Partners were hired *en masse* by FMS, indicating that the alleged dangerous condition was likely to be discovered by FMS. Moreover, PA Partners denies that Appellants should be entitled to amend their complaints at this juncture, since it is clear, in PA Partners' view, that Appellants cannot possibly state a Section 385 claim. *See* Brief for Appellees at 21–40.[6]

Section 385 of the Second Restatement of Torts applies in this jurisdiction. *See generally Staub v. Toy Factory, Inc.,* 749 A.2d 522, 534 (Pa.Super.2000). In the 1960s, this Court adopted Section 385 of the First Restatement, *see Prost v. Caldwell Store, Inc.,* 409 Pa. 421, 428–29, 187 A.2d 273, 276–77 (1963) (quoting *Krisovich v. John Booth, Inc.,* 181 Pa.Super. 5, 9–10, 121 A.2d 890, 891–92 (1956)), which is materially identical to Section 385 of the Second Restatement. *Compare* RESTATEMENT (FIRST) TORTS § 385 (1934), *with* RESTATEMENT (SECOND) TORTS § 385 & cmt. a (1965). The present matter, as noted, involves construing the latter provision. As this raises an issue of law, our review is *de novo* and plenary.

Under its express terms, Section 385 imposes liability on a defendant who makes an alteration "on behalf of" a possessor of land. The term "on behalf of" means that the servant or contractor who makes the alteration does so for the possessor's benefit and by his authority. *See* RESTATEMENT (SECOND)

6. PA Partners also argues at some length that Appellants' contention that it acted in a "dual capacity" as a vendor and contractor is unsupportable under the present circumstances. *See* Brief for Appellees at 16–20. Appellants did not articulate any such theory in their brief, although they did raise the dual-capacity doctrine at oral argument, suggesting that PA Partners acted in a dual capacity as possessor and contractor. For the reasons given below, Appellants cannot prevail on this theory.

TORTS § 383, cmt. a (1965), *incorporated by* RESTATEMENT (SECOND) TORTS § 385 cmt. b (1965). It would be unreasonable to attenuate the plain import of this definition to cover a situation where the possessor acts on his own behalf, particularly in view of the portion of Section 385 referencing the acceptance by the possessor of the work performed by the contractor or servant. *See* RESTATEMENT (SECOND) TORTS § 385 (1965) (reflecting that liability only exists "after [the employee's or contractor's] work has been accepted by the possessor"); *see also* RESTATEMENT (SECOND) TORTS § 385 cmt. d (1965) ("When the work is completed and accepted by the possessor, *the servant's or contractor's connection with the land ceases,* just as a repairman loses possession of a chattel which is entrusted to him for repair when he returns it to its owner." (emphasis added)). Additionally, as the Superior Court recognized, the portion of the Restatement in which Section 385 appears pertains to entities "other than" a possessor or vendor of land. We therefore find merit in PA Partners' position that Section 385 contemplates two distinct entities—a possessor, and a person acting on the possessor's behalf—and only pertains to the potential liability of the latter.[7]

Under the facts alleged here, all of the complained-of alterations to the steel mill occurred while PA Partners was in possession of the property. Indeed, PA Partners possessed the facility until FMS purchased it, at which juncture PA Partners ceased being the possessor. Hence, there was no interval during which PA Partners could have acted as a

7. This undercuts Appellants' belated attempt to rely upon a dual-capacity theory of liability. *See supra* note 6. In any event, such theory has been applied in limited circumstances, most notably, in the workers' compensation arena. Under the doctrine, an employer, who is normally shielded from tort liability by the exclusive character of workers' compensation remedies, may become liable in tort to his employee if he occupies, in addition to his capacity as an employer, a second capacity that confers on him obligations independent of those imposed on employers. *See, e.g., Tatrai v. Presbyterian Univ. Hosp.,* 497 Pa. 247, 439 A.2d 1162 (1982) (imposing tort liability on a hospital for negligence occurring during its medical treatment of an employee). *See generally Budzichowski v. Bell Tel. Co. of Pa.,* 503 Pa. 160, 167, 469 A.2d 111, 114 (1983) (defining the dual capacity doctrine).

contractor or servant of a separate possessor of the land. That being the case, Section 385 has no application to the facts asserted, regardless of whether Appellants can theoretically amend their complaints to state that FMS was unlikely to discover the deficiencies in question.[8]

In light of our holding, we need not reach the question of whether Section 385 only applies to latent defects. *See Stecher v. Ford Motor Co.*, 571 Pa. 312, 319, 812 A.2d 553, 557 (2002) (declining to reach an issue addressed by the Superior Court where this Court's resolution of a different issue rendered the first one moot). We merely note that the intermediate court's affirmative answer to the question is, as discussed, contrary to the holding reached by the Commonwealth Court in *Gilbert*, and that it is not obvious from Section 385's plain text.

Nothing in this opinion is intended to diminish the gravity of the tragic accident in which Mr. Livingston was killed and Mr. Beltowski was seriously injured. As that accident is alleged to have been caused by PA Partners' negligence arising while it

8. As to PA Partners' status as the employer of the employees and/or contractors who made the physical changes to the plant, Appellants rely on a *respondeat superior* theory of liability, as they argue in a single, parenthetical sentence that "liability flows back to [PA] Partners as the employer of the workmen who performed [the] modifications because they were acting in the scope of their employment." Brief for Appellants at 15. Appellants do not reference any authority for imposing liability on these grounds in the post-sale timeframe, and Section 352 (the substance of which was endorsed by this Court in *Palmore v. Morris, Tasker & Co.*, 182 Pa. 82, 89–90, 37 A. 995, 999 (1897)) reflects a general rule to the contrary:

Except as stated in § 353, a vendor of land is not subject to liability for physical harm caused to his vendee or others while upon the land after the vendee has taken possession by any dangerous condition, whether natural or artificial, which existed at the time that the vendee took possession.

RESTATEMENT (SECOND) TORTS § 352 (1965); *see also Brock v. Rogers & Babler, Inc.*, 536 P.2d 778, 782 (Alaska 1975) ("One who lacks possession and control of property normally should not be held liable for injuries which he is no longer in a position to prevent."); *cf. Farabaugh v. Pa. Tpk. Comm'n*, 590 Pa. 46, 64, 911 A.2d 1264, 1275 (2006) ("So long as the owner [of land] is out of control of the land, no duty is placed on the owner."). Although Section 353 contains a hidden-defects exception to this rule, such exception is not presently in issue. *See supra* note 3.

was the possessor of the steel plant, however, liability cannot logically be imposed upon PA Partners under Section 385 as a contractor performing work on behalf of a separate possessor.

For the reasons given, we agree with the Superior Court—albeit on different grounds—that Section 385 of the Second Restatement of Torts does not provide a basis to hold PA Partners liable for damages ensuing from the unfortunate incident that occurred in June 1994, and that, accordingly, Appellants have not demonstrated that the common pleas court erred in sustaining PA Partners' demurrer.

The order of the Superior Court is affirmed.

Justice ORIE MELVIN did not participate in the consideration or decision of this case.

Chief Justice CASTILLE, Justices EAKIN, BAER, TODD, and Justice McCAFFERY join the opinion.