J-A26012-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| HEIDI M. REYNOLDS, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| STEVEN D. STAMBAUGH AND STAMBAUGH LAW, PC, | |
| Appellees | No. 1889 MDA 2013 |

Appeal from the Order Entered October 16, 2013
In the Court of Common Pleas of York County
Civil Division at No(s): 2010-SU-006752-81

| | |
|---|---|
| HEIDI M. REYNOLDS, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| STEVEN D. STAMBAUGH AND STAMBAUGH LAW, PC, | |
| Appellees | No. 1890 MDA 2013 |

Appeal from the Order April 8, 2013
In the Court of Common Pleas of York County
Civil Division at No(s): 2010 SU 6752 81

BEFORE:  BOWES, MUNDY, and JENKINS, JJ.

J-A26012-14

**FILED FEBRUARY 05, 2015**

Heidi Reynolds ("Plaintiff") appeals from the October 16, 2013 order granting preliminary objections and dismissing this legal malpractice action.[1] After careful review, we reverse and remand.

On December 22, 2010, Plaintiff instituted this lawsuit against Appellees Steven D. Stambaugh and Stambaugh Law, PC (collectively "Stambaugh"). Preliminary objections were filed to the first complaint, the first amended complaint, and the second amended complaint.[2] In each instance, the preliminary objections were granted, but Plaintiff was also accorded leave to amend. After Plaintiff filed her third amended complaint, which she incorrectly refers to as a second amended complaint, Stambaugh again filed preliminary objections in the nature of a demurrer. He averred

_____

[1] Although Plaintiff also appealed from an April 8, 2013 order sustaining preliminary objections to an amended complaint, that order expressly stated that the dismissal was granted without prejudice. In that order, Plaintiff also was afforded twenty days to amend the complaint, which action she undertook. Subject to exceptions that are inapplicable herein, this Court has jurisdiction only over final orders. Pa.R.A.P. 341(a) ("an appeal may be taken as of right from any final order of an administrative agency or lower court"). A final order is an order that disposes of all claims and of all parties, or is expressly defined as a final order by statute or the ordering court. Pa.R.A.P. 341(b). Since the April 8, 2013 order did not dispose of this case and allowed Plaintiff to proceed by amending her complaint, it is not final and appealable. Hence, we quash the appeal filed from that order. We consider the merits of the dismissal of this case in the appeal from the final order entered herein on October 16, 2013, which dismissed this action with prejudice.

[2] Each complaint had a certificate of merit affixed to it.

- 2 -

that Plaintiff had failed to plead a viable cause of action since she settled the underlying lawsuit and had no ascertainable damages due to his purported malpractice. On October 16, 2013, those preliminary objections were granted without leave to amend, and the action was dismissed. The propriety of this final order is the subject of our review.

We now recite the relevant facts as set forth in the final complaint as well as its accompanying exhibits. On June 11, 2008, Plaintiff hired Stambaugh to represent her in connection with a slip-and-fall accident that occurred on October 29, 2006. Plaintiff tripped on steps leading to premises located at 139 N. Market Street, Mount Joy, Pennsylvania. As a result of the fall, Plaintiff sustained three fractures to her right foot, required surgery, and developed a Methicillin-resistant Staphylococcus aureus ("MRSA") infection from that surgery. Plaintiff underwent another surgery and additional medical procedures due to the MRSA infection.

The owners of 139 N. Market Street were Michael and Kelly Groff. They had hired Doug Lamb Construction Inc. ("Lamb") to replace a front retaining wall and brick sidewalk with concrete. Lamb completed the job just prior to Plaintiff's accident. Lamb allegedly created a dangerous condition that caused Plaintiff's fall in that Lamb changed the rise of the Groffs' stairs in the following manner. The rise of the bottom step was four inches whereas the rise of the remaining steps was ten inches. Plaintiff fell after she tripped on the bottom step.

Plaintiff alleged in her complaint filed herein that when Plaintiff hired Stambaugh on June 11, 2008, Stambaugh agreed to prepare and prosecute a premises liability action against the Groffs, "their general contractor Doug Lamb Construction, Inc.," as well as any other party responsible for Plaintiff's injuries secondary to the fall. Complaint, 4/29/13, at ¶ 8; *see also id*. at 16. Stambaugh represented that he would contact an engineer to provide a professional opinion as to whether the construction that was completed by Lamb just before the fall was dangerous.

On June 13, 2008, Stambaugh sent pictures of the accident scene to an expert witness, Lawrence C. Dinoff, A.I.A, NCARB, of Robeson Forensic, Inc. In a cover letter, Stambaugh indicated a desire to discuss the matter with that expert as to "whether we would be able to bring a claim against the contractor [, *i.e.*, Lamb] regarding the slope of the sidewalk." *Id*. at ¶ 18. Stambaugh failed to retain Mr. Dinoff or any other expert witness to evaluate the merits of Plaintiff's case against Lamb. *Id*. at ¶ 19.

Stambaugh did not institute an action on Plaintiff's behalf until the last day of the applicable statute of limitations, October 29, 2008. He did not name Lamb as a defendant, and he never served the writ of summons on the Groffs, who were the only named defendants. While the writ of summons was reissued, it was never delivered to the sheriff's office. From June 2008 through March 2010, Plaintiff diligently requested information about the status of her case. Stambaugh's paralegal in charge of the matter

repeatedly gave Plaintiff inaccurate accounts of the events and progress of the underlying action.

On March 17, 2010, Plaintiff hired another lawyer, John D. Zervanos of Solff & Zervanos ("Zervanos"). It took nearly sixty days for Zervanos to obtain the file from Stambaugh. On June 1, 2010, Zervanos entered his appearance on Plaintiff's behalf in the lawsuit, he achieved service of the writ of summons on the Groffs on June 21, 2010, and he filed a complaint on July 28, 2010. Zervanos deposed Stambaugh and discovered that the paralegal in question "had been fired for mishandling and even fabricating case related documents to disguise the actual conduct" of Stambaugh's cases, including that of Plaintiff. *Id*. at ¶ 32(a). Additionally, the paralegal "repeatedly made false and misleading statements to Plaintiff, to conceal omissions by [Stambaugh] in competently and diligently prosecuting Plaintiff's claim in the Underlying Action." *Id*. at ¶ 34.

The Groffs filed preliminary objections alleging that Plaintiff failed to timely effectuate service of process and seeking dismissal of the lawsuit. While the trial court overruled those objections, it recognized that there was a substantial ground for a difference of opinion on that matter and certified the order for interlocutory review. The Groffs appealed. Zervanos informed Plaintiff that it would take approximately eighteen months to litigate the appeal and that the Superior Court could determine that the writ was not

timely served, which would mean that the underlying case would be dismissed.

On December 30, 2011, Zervanos called Plaintiff to report that settlement discussions were progressing and that "strangely, an attorney for Stambaugh" also was participating in settlement negotiations. *Id*. at ¶ 38. At that time, neither Zervanos nor Plaintiff was aware that the Superior Court had entered an order dismissing the interlocutory appeal.

On January 10, 2012, Zervanos conveyed that the Groffs had offered $17,000 to settle the case and a verbal accord was reached. On January 30, 2012, Zervanos became aware of the dismissal of the appeal, and Plaintiff refused to execute a written agreement. On January 31, 2012, "Stambaugh, through counsel immediately threatened to enforce the settlement" as to Plaintiff. *Id*. at ¶ 41. Stambaugh then attempted to be included within the parties released by Plaintiff by offering an additional $1,000. Plaintiff refused to release him based on her belief that his malpractice had forced her to settle her case for less than it was worth, and the release in question expressly excludes Stambaugh from its parameters.

In the present lawsuit, Plaintiff averred that Stambaugh was negligent in two respects: for failing to name Lamb as a defendant in the underlying action and due to his failure to attempt service of the writ of summons on the Groffs. She claimed that, as a result of Stambaugh's misfeasance in the handling of her lawsuit, "Plaintiff sustained a significant diminution in [the]

value of her claims." *Id*. at ¶ 44. Plaintiff's complaint had two counts: "Count I—Professional Negligence/Malpractice," and "Count II—Breach of Fiduciary Duty." *Id*. at (unnumbered pages) 7, 8.

In granting Stambaugh's preliminary objections, the trial court concluded that Plaintiff did not suffer any loss from Stambaugh's malpractice. It reasoned that Plaintiff "voluntarily chose to settle and dismiss her underlying action in exchange for a general release of any and all claims in the sum of $17,000.00. As such, Plaintiff has not pled, nor can she plead, the requisite element of damages." Trial Court Opinion, 10/17/13, at 5. It noted that Plaintiff set forth that she settled for less than her case was worth due to a reasonable belief that the Superior Court would eventually reverse the trial court's conclusion that her case could proceed despite the significant delay in service of process. The court ruled, "A settlement based on the possibility of a later adverse appellate decision cannot support a malpractice action. Such reasoning would require the Court to speculate far beyond normal boundaries." *Id*. at 5-6. The court also concluded that Plaintiff failed to aver that she had a viable cause of action against the contractor.

On appeal, Plaintiff raises these contentions:

> [1.] Whether Reynolds set forth a cognizable claim for damages when she settled the underlying action for diminished value secondary to Appellees' legal errors?
>
> [2.] Whether Reynolds pleaded a cognizable "case-within-the-case" for Appellees' failure to timely serve the underlying

action's Defendant <u>and</u> join an indispensable party in the underlying action?

[3.] Whether Reynolds pleaded a cognizable breach of fiduciary duty?

Appellant's brief at 9.

Initially, we outline our standard of review.

As a trial court's decision to grant or deny a demurrer involves a matter of law, our standard for reviewing that decision is plenary. Preliminary objections in the nature of demurrers are proper when the law is clear that a plaintiff is not entitled to recovery based on the facts alleged in the complaint. Moreover, when considering a motion for a demurrer, the trial court must accept as true all well-pleaded material facts set forth in the complaint and all inferences fairly deducible from those facts.

*Little Mountain Community Ass'n, Inc. v. Southern Columbia Corp.*, 92 A.3d 1191, 1195 (Pa.Super. 2014) (citation omitted). A demurrer can be granted "only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief. If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections." *Id*. (citation omitted).

In order to pursue a legal malpractice action, the plaintiff initially must prove that he had a cause of action in the underlying lawsuit and that the defendant in the legal malpractice case was negligent in prosecuting that proceeding. *Sokolsky v. Eidelman*, 93 A.3d 858 (Pa.Super. 2014). Thus, we look at the prior action litigated by the attorney to determine whether the plaintiff has a present lawsuit against the attorney. The plaintiff in the

legal malpractice action also must prove that he would have recovered a judgment in the underlying action. *Id.* To summarize, the plaintiff in the legal malpractice case must establish that the lawyer negligently handled the underlying lawsuit and that the negligence was the proximate cause of loss to the plaintiff. *Id*. The legal malpractice cause of action is articulated as having three elements: the plaintiff hired the attorney or some other grounds for a duty inuring to plaintiff's benefit; the lawyer's failure to exercise ordinary skill and knowledge; and that such failure proximately caused damages to the plaintiff. *Id*. These damages must be actual rather than speculative. *Id*.

In this case, it is uncontested that Plaintiff hired Stambaugh to represent her in the underlying lawsuit. She averred that Stambaugh failed to exercise ordinary skill and knowledge in two respects. First, he failed to sue Lamb, which allegedly created the hazardous condition that caused her fall. Second, he did not make any effort to serve the writ against the Groffs, thereby creating the possibility that her case would be dismissed even if she recovered a verdict against them. We first address whether her allegations supported the second element of her cause of action, which pertains to the establishment of the case within this case. While this analysis involves Plaintiff's second contention on appeal, we address it first since it impacts upon our discussion of the damages aspect of her cause of action and

whether she can recover herein after she settled the personal injury lawsuit against the Groffs.

We agree with Plaintiff that she did have a cause of action against Lamb. **See** Appellant's brief at 21-22.[3] As noted by Plaintiff, Lamb was responsible for creating the condition that caused her to fall, and she specifically set forth in her complaint that Stambaugh agreed to sue both the contractor Lamb and the owners of the premises. In **Longwell v. Giordano**, 57 A.3d 163, 170-71 (Pa.Super. 2012), we noted that

> One who on behalf of the possessor of land erects a structure or creates any other condition thereon is subject to liability to others upon or outside of the land for physical harm caused to them by the dangerous character of the structure or condition after his work has been accepted by the possessor, under the same rules as those determining the liability of one who as manufacturer or independent contractor makes a chattel for the use of others.

> **Gresik v. PA Partners, L.P.,** 989 A.2d 344, 348 (Pa.Super. 2009), *affirmed on other grounds,* **Gresik v. PA Partners, L.P.,** 33 A.3d 594 (Pa. 2011) (quoting Restatement (Second) of Torts § 385).

> As the liability of a servant or an independent contractor who erects a structure upon land or otherwise changes its physical condition is

_____

[3] In her brief, Plaintiff refers to Lamb as an indispensable party. However, the proper inquiry is whether Lamb was subject to liability and should have been a named defendant. Given the facts as pled, there was a sufficient basis to conclude that Lamb was a potential defendant and that Stambaugh should have pursued the inquiry as to Lamb's liability. Plaintiff, at trial, will be required to produce sufficient evidence that Lamb was subject to liability for the condition leading to her fall.

> determined by the same rules as those which determine the liability of a manufacturer of a chattel, it follows that such a servant or contractor who turns over the land with knowledge that his work has made it dangerous **in a manner unlikely to be discovered by the possessor** is subject to liability both to the possessor, and to those who come upon the land with the consent of the possessor or who are likely to be in its vicinity.

**Id**. at 350 (quoting Restatement (Second) of Torts § 385 cmt. c.) (emphasis added).

We emphasize that we are reviewing the grant of a demurrer. At this juncture, the allegations in the complaint must be accepted as true. There were sufficient facts pled in the final complaint to conclude that Lamb did create a dangerous condition due to the difference in the rise of the steps. Lamb was subject to liability under the above theory since, according to the complaint filed herein, it created the condition just prior to Plaintiff's fall and the Groffs would have been unlikely to discover the defect. Moreover, in her complaint, Plaintiff specifically averred that Stambaugh agreed to prepare and prosecute a premises liability action against the Groffs as well as "their general contractor Doug Lamb Construction, Inc." Complaint, 4/29/13, at ¶ 8; **see also id**. at 16. Thus, Stambaugh expressly agreed to sue Lamb.

That Stambaugh agreed to sue Lamb also is evidenced by the letter he sent to secure the services of an expert witness on the defect question. Stambaugh, by that action, admitted that Lamb was a potential defendant herein. According to the complaint, Stambaugh simply abandoned the

matter and failed to secure the services of the expert to explore whether the lawsuit could be pursued against Lamb. Simply put, if accepted as true, the allegations in the complaint set forth a sufficient basis for concluding that Stambaugh was negligent for not securing an expert witness to ascertain whether were grounds for naming Lamb as a defendant in the underlying lawsuit. Plaintiff must be accorded an opportunity to prove this allegation by presenting proof as to this aspect of her case. It was not incumbent upon her, at this point in the proceedings, to procure an expert witness on the subject matter.

Stambaugh claims that, in her amended complaint filed on October 22, 2012, Plaintiff admitted that Lamb built the stairs in accordance with the local code. Stambaugh asserts that this averment constituted a judicial admission that Lamb was not subject to liability in the underlying action. First, we note that at no point in her pleadings did Plaintiff concede that she did not have a viable claim against Lamb. In her second amended complaint, Plaintiff alleged "D. Lamb Construction was the construction contractor hired by the Groff's [sic] to replace the Groff's front retaining wall and existing brick sidewalk with the poured concrete, the walkway to which the specifications were provided by the [Mount Joy] Borough." Second Amended Complaint, 10/22/12, at ¶ 10.

This averment could be construed to suggest, as argued by Stambaugh, that Lamb constructed the sidewalk in accordance with the local

- 12 -

building code. On the other hand, as noted by Plaintiff in her reply brief, the averment can be read as outlining that Lamb was hired to perform the construction in accordance with code supplied by the borough. However, the averment does not admit that Lamb actually fulfilled that aspect of the contract work and built the stairs to borough code. Appellant's reply brief at 4 ("The mere fact that the Mount Joy Borough provided the specifications does not connote that D. Lamb complied therewith as Appellees argue.").

Additionally, merely because a structure complies with a local building code does not mean that it is not dangerous and that the entity that constructed the compliant structure is not subject to liability for creating a dangerous condition. Therefore, any purported admission that the sidewalk met borough code was not a concession that Lamb was not subject to liability for creating a dangerous condition by building stairs with differing rises. While a court may utilize a defendant's breach of local building code to create a duty, Restatement (Second of Torts) § 286,[4] a contractor who

_____

[4] That section states:

> The court may adopt as the standard of conduct of a reasonable man the requirements of a legislative enactment or an administrative regulation whose purpose is found to be exclusively or in part
>
> > (a) to protect a class of persons which includes the one whose interest is invaded, and

*(Footnote Continued Next Page)*

creates a dangerous condition is not absolved of liability due to his compliance with local building codes.

Restatement (Second) of Torts § 288C provides: "Compliance with a legislative enactment or an administrative regulation does not prevent a finding of negligence where a reasonable man would take additional precautions." *See also id*. at comment a ("Where . . . [an] ordinance . . . is found to define a standard of conduct for the purposes of negligence actions, as stated in §§ 285 and 286, the standard defined is normally a minimum standard. . . . This . . . administrative minimum does not prevent a finding that a reasonable man would have taken additional precautions[.]"). Pennsylvania law is in accord with these precepts. *Berkebile v. Brantly Helicopter Corp.*, 281 A.2d 707, 710 (Pa.Super. 1971) (*en banc*) (holding "[c]ompliance with a law or administrative regulation relieves the actor of negligence *per se*, but it does not establish as a matter of law that due care was exercised."); *McKenzie v. Cost Brothers, Inc. v. Dickerson Structural Concrete Corp.*, 409 A.2d 362 (Pa. 1979) (industry standards

*(Footnote Continued)* ────────────────

> (b) to protect the particular interest which is invaded, and

> (c) to protect that interest against the kind of harm which has resulted, and

> (d) to protect that interest against the particular hazard from which the harm results.

Restatement (Second of Torts) § 286.

are not conclusive factors in determining negligence, but merely provide some evidence of the appropriate standard of care).

Additionally, we agree with Plaintiff that she sufficiently pled a negligence claim against Stambaugh with respect to his failure to achieve service of the writ on the Groffs. He filed the writ on October 29, 2008, and never obtained service upon the Groffs for a period of eighteen months. Zervanos was able to serve the writ twenty-one days after entering his appearance in the case, on June 21, 2010. By that time, twenty months had lapsed since the filing of the writ and the expiration of the statute of limitations. In light of this delay, the Groffs unquestionably had valid grounds for seeking dismissal of the lawsuit filed against them.

As we noted in **Englert v. Fazio Mechanical Services, Inc.**, 932 A.2d 122, 124 (Pa.Super. 2007) (emphasis added), "It is well settled in this Commonwealth . . . that **service of original process** completes the progression of events by which an action is commenced." **See Lamp v. Heyman**, 366 A.2d 882 (Pa. 1976). Even when a lawsuit is commenced within the statutory limits, "the statute of limitations is tolled only if the plaintiff then makes a good faith effort to effectuate service." **Englert**, **supra** at 124. A plaintiff must make reasonable efforts to obtain service in order to avoid dismissal based upon the applicable statute of limitations. **Id**. Where a party does nothing to ensure that service is effectuated, the statute of limitations is not tolled. **Id**.

- 15 -

Herein, the allegations in the complaint establish wholesale inaction by Stambaugh. He simply did nothing to seek service of the writ, which was filed on the last day of the applicable statute of limitations, even though Stambaugh was hired months before the statute expired. While the writ was re-issued numerous times, no steps were taken to serve it; it was not even taken to the sheriff's office. The Groffs unquestionably had a strong case for dismissal of the underlying suit based upon the statute of limitations. While the trial court in that lawsuit exercised remarkable lenity by allowing the case to proceed against the Groffs, it also recognized its ruling was legally tenuous since it permitted interlocutory review of that order. Hence, we concur that the Plaintiff set forth a valid legal malpractice claim that Stambaugh's neglect to perform any action to effectuate service of the writ on the Groffs created a legal basis for dismissal of the underlying lawsuit.

We now address the question of whether Plaintiff's settlement of the other action precludes her from establishing in this matter that she suffered damages due to Stambaugh's negligence. As noted, Plaintiff averred that she settled the action for substantially less than it was worth both based upon the risk she faced that her claim against the Groffs would ultimately be dismissed, even if she prevailed against them at a jury trial, and upon the fact that she could not proceed against Lamb. Stambaugh's position was and is that, when she settled, Plaintiff still could have proceeded to trial against the Groffs since their preliminary objections had been overruled by

the trial court in the other action. Stambaugh averred and now claims on appeal that the question of whether Plaintiff sustained damages was too speculative to submit to the jury.

While the trial court agreed with Stambaugh's contention, we do not. Given the articulated law regarding service of process and Stambaugh's utter failure to undertake any action to achieve such service, there was a virtually inevitable likelihood that, after final judgment, this Court would have reversed the trial court's refusal to dismiss this case against the Groffs based upon lack of service before the expiration of the statute of limitations.

While Stambaugh insists that, given the trial court's refusal to dismiss the case against the Groffs, the Plaintiff could have proceeded against the Groffs and obtained a damages award, we note the following. Lamb had not been joined as a defendant. Thus, the fact that Plaintiff could have gone to trial against the Groffs does not obviate the fact that the Groffs could have assigned blame to Lamb for the defect in the steps. Thus, Plaintiff was confronted with a risk of not recovering against the Groffs, aside from the statute-of-limitations question.

Accepting as true Plaintiff's articulated facts in the complaint about her broken foot, contraction of MRSA, and subsequent surgeries, as well as exhibits regarding her medical costs, the settlement sum is far less than the amount of her damages from the fall. We do not agree that it was speculative that the Plaintiff could have recovered significantly in excess of

$17,000 had she not faced a risk of dismissal as to the Groffs and an inability to recover against Lamb. Therefore, we do not view her damages claim as speculative merely because she could have gone to trial against the Groffs. We concur that the facts as set forth in the complaint present a viable claim that Plaintiff settled her case for a diminished value due to Stambaugh's malpractice.

We now address whether the Plaintiff was precluded from recovering in this lawsuit due to her settlement of the underlying action. This question pertains to application of the Supreme Court's decision in *Muhammad v. Strassburger, McKenna, Messer, Shilobod and Gutnick*, 587 A.2d 1346 (Pa. 1991). Therein, the defendant law firm in a legal malpractice case represented the plaintiffs in a medical malpractice lawsuit following the death of the plaintiffs' child. The defendant law firm negotiated a settlement of the medical malpractice case, and the settlement offer was verbally accepted by the plaintiffs. The wife changed her mind about the settlement before signing a written accord, but the agreement was subsequently enforced by the trial court in the medical malpractice case. The plaintiffs filed a legal malpractice case against the law firm that negotiated the medical-malpractice settlement. The legal malpractice case was dismissed, and our Supreme Court affirmed that dismissal.

The *Muhammad* Court concluded that the plaintiffs had failed to state of cause of action against the law firm. The Court ruled that it would "not

permit a suit to be filed by a dissatisfied plaintiff against his attorney following a settlement to which that plaintiff agreed, unless that plaintiff can show he was fraudulently induced to settle the original action." *Id*. at 1348. It held that a legal malpractice action is not viable against an attorney "based on negligence and/or contract principles when that client has agreed to a settlement. Rather, only cases of fraud should be actionable." *Id*.

The court premised its ruling on its "strong and historical public policy of encouraging settlements[.]" *Id*. at 1349. It noted that to allow a client to proceed to file a legal malpractice case after agreeing to settle the underlying lawsuit would "create chaos in our civil litigation system. Lawyers would be reluctant to settle a case for fear some enterprising attorney representing a disgruntled client will find a way to sue them for something that 'could have been done, but was not.'" *Id*. It observed that permitting a legal malpractice case to proceed when the underlying action was settled would both "discourage settlements and increase substantially the number of legal malpractice cases. A long-standing principle of our courts has been to encourage settlements; we will not now act so as to discourage them." *Id*. Our High Court concluded that a flood of litigation would flow from permitting the settling client to pursue a case against his former attorney. This result, it continued, would create massive delays in the process of justice by discouraging settlements and creating lawsuits when cases do settle. It therefore foreclosed

the ability of dissatisfied litigants to agree to a settlement and then file suit against their attorneys in the hope that they will recover additional monies. To permit otherwise results in unfairness to the attorneys who relied on their client's assent and unfairness to the litigants whose cases have not yet been tried. Additionally, it places an unnecessarily arduous burden on an overly taxed court system.

*Id*. at 1351.

The ***Muhammad*** Court also noted that it would be speculative to assume that a jury would have returned a verdict that was more than the settlement amount agreed to by the parties in the underlying lawsuit. In this respect it opined:

It becomes obvious that by allowing suits such as this, which merely "second guess" the original attorney's strategy, we would permit a venture into the realm of the chthonic unknown. It is impossible to state whether a jury would have awarded more damages if a suit had been filed against another potential party or under another theory of liability. It is indeed possible that a smaller verdict would have been reached or a defense verdict ultimately would have been rendered. Thus, sanctioning these "Monday-morning quarterback" suits would be to permit lawsuits based on speculative harm; something with which we cannot agree.

*Id*. at 587 A.2d at 1352 n.13.

***Muhammad*** carved out an exception to this rule and concluded that there would be recourse for a plaintiff who was fraudulently induced into agreeing to settle. Of crucial importance herein, the Court stated that, if "the lawyer knowingly commits malpractice, but does not disclose the error and convinces the client to settle so as to avoid the discovery of such error, then the client's agreement was fraudulently obtained." *Id*. at 1351

(emphasis omitted). It continued that, while the settlement with the defendant in the underlying action would be upheld, "the plaintiff who has been defrauded may have redress" in that the Court would "permit him to proceed under a theory of fraud against the attorney who represented him in the original action."

As our High Court clarified in *McMahon v. Shea*, 688 A.2d 1179 (Pa. 1997), the *Muhammad* decision does not absolutely bar a legal malpractice lawsuit when the underlying action was settled. Therein, the defendant-lawyer negotiated a settlement for the plaintiff-client in a divorce case. The settlement agreement was structured so that it failed to terminate alimony upon remarriage of the other spouse. The client sued the lawyer when his spouse remarried and his alimony obligation continued. Our Supreme Court allowed the case to proceed despite the *Muhammad* decision. The Court concluded that the considerations underlying that case were not implicated in *McMahon* since the malpractice case was not premised upon dissatisfaction with the amount the attorney obtained in the settlement, but on the lawyer's failure to properly advise the client about the legal consequences of the agreement. It expressly limited *Muhammad* to the facts of that case and noted that the purpose of reducing litigation would not be served by precluding the malpractice action in question.

In this case, we first conclude that the exception created in *Muhammad* itself is implicated. Plaintiff alleged that Stambaugh committed

malpractice on two accounts. He did not sue Lamb and did nothing to achieve service of process against the Groffs. Thereafter, his paralegal made various fraudulent representations to the Plaintiff about the status of her lawsuit. Plaintiff did uncover the malpractice when she secured the services of another lawyer. However, by then, the malpractice had significantly diminished her ability to recover damages in the underlying suit.

Particularly significant is the following. Stambaugh, in derogation of his duty to his former client, inserted himself into the settlement negotiations between Plaintiff and the Groffs. Plaintiff agreed to settle the case for $18,000. She was not aware at that time that the Groffs offered $17,000 and that Stambaugh was to contribute $1,000 also be included in the release. When Plaintiff changed her mind about settlement, **Stambaugh** threatened to file a petition against his former client to force her to sign the written accord with the Groffs so that he could avoid the legal malpractice suit through operation of ***Muhammad***. When Plaintiff discovered that she would be releasing Stambaugh for $1,000, she refused to sign the document. She did sign an accord with the Groffs for $17,000 but Stambaugh was expressly excluded from coverage in the release.

Plaintiff settled her case for less than it was worth based after egregious malpractice committed by the lawyer who was uninvolved in the settlement, and based upon a substantial risk that she would recover nothing in the other case due solely to the first attorney's negligence. This

scenario is not ethically or theoretically different from the exception created in **Muhammad** for a negligent attorney who obtains a settlement himself to hide and avoid liability for his misfeasance in the underlying lawsuit. Our belief that Stambaugh is subject to liability despite the settlement of the personal lawsuit is reinforced by his threat to enforce the settlement agreement reached by the Groffs and Plaintiff, which he had no standing to pursue, as well as by the fact that he tried to obtain a release from liability for $1,000.

Allowing recovery will not create concerns of a flood of litigation since the first lawyer committed the malpractice, and a second one obtained the settlement that reflected the reduced value of the case caused by the first lawyer's mistakes. The case herein does not involve second-guessing a settlement since the attorney who obtained the settlement accord is not the one being sued. The Plaintiff is not engaging in speculation about whether she could have obtained more money from a jury. Her ability to recover her damages in the underlying action was unquestionably impacted by the legal malpractice alleged in the complaint.

A damages award would not be speculative. After it decides whether malpractice occurred, a jury in this case can readily assess the value of the Plaintiff's damages from the fall. Indeed, a jury assessing damages is no different from a jury in the underlying slip-and-fall determining the amount of damages that Plaintiff sustained. As our Supreme Court noted, in a legal

malpractice action, "The test of whether damages are remote or speculative has nothing to do with the difficulty in calculating the amount, but deals with the more basic question of whether there are identifiable damages. Thus, damages are speculative only if the uncertainty concerns the **fact** of damages rather than the amount." *Rizzo v. Haines*, 555 A.2d 58, 68 (Pa. 1989) (citation omitted; emphasis in original). Given the nature of the malpractice in question, the fact of damages is not speculative. We therefore conclude that the trial court erred in granting preliminary objections as to the Plaintiff's cause of action sounding professional negligence/malpractice.

Plaintiff's final position is that she set forth a viable claim for breach of fiduciary duty. "At common law, an attorney owes a fiduciary duty to his client; such duty demands undivided loyalty and prohibits the attorney from engaging in conflicts of interest, and breach of such duty is actionable." *Maritrans GP Inc. v. Pepper, Hamilton & Scheetz*, 602 A.2d 1277, 1283 (Pa. 1992). On appeal, Plaintiff avers that the "failure to perfect service and sue the general contractor as a necessary party are themselves breaches of fiduciary duties." We do not view these actions either as breaches of Stambaugh's duty of undivided loyalty to the Plaintiff or as a conflict of interest. These lapses involve ordinary negligence/malpractice rather than actions taken in derogation of a duty of loyalty to Plaintiff.

However, Plaintiff also notes that Stambaugh participated in the settlement negotiations, threatened to force Plaintiff to sign the accord with the Groffs, which accord concerned a matter wherein he had represented Plaintiff, and then he tried to insert himself in the settlement agreement for a rather paltry sum. These activities can be viewed as a breach of loyalty to the Plaintiff. Even though they occurred after his representation ceased, he was engaging in self-interested efforts in an action where he had represented Plaintiff and his actions were in direct conflict of his duty of loyalty to his client.

The appeal at 1890 MDA 2013 is quashed. The October 16, 2013 order is reversed. Case remanded. Jurisdiction relinquished.

Judge Mundy Concurs in the Result.

Judge Jenkins Concurs in the Result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/5/2015