**James LONGWELL and Delores Longwell, Husband and Wife, Appellants**

v.

**Joseph GIORDANO, Jr. and Beth Lynn Giordano, Husband and Wife, Valleyview Estates**

v.

**C.J. Long Paving Company.**

Superior Court of Pennsylvania.

Argued Oct. 2, 2012.

Filed Nov. 8, 2012.

Reargument Denied Jan. 11, 2013.

Charles W. Garbett, New Castle, for appellants.

Richard F. Andracki, Pittsburgh, for appellee.

BEFORE: BENDER, DONOHUE, and STRASSBURGER,* JJ.

OPINION BY STRASSBURGER, J.:

James and Delores Longwell (the Longwells) appeal from the order of February 3, 2012 which granted summary judgment in favor of Joseph and Beth Giordano (the Giordanos) and C.J. Long Paving Company (C.J. Long). We reverse in part, affirm in part, and remand for further proceedings consistent with this opinion.

* Retired Senior Judge assigned to the Superior

The trial court summarized the relevant facts as follows:

Prior to December 2008, [the Longwells] had lived at the Valleyview Estates apartment complex for approximately 20 years—10 years at their present apartment, and 10 years previously in another apartment in the complex. [Mr. Longwell] testified that the driveway had been repaired two years before his fall. However, from the evidence now of record and the pleadings it appears that the most recent repaving had been performed in the summer of 2008, approximately six months before the accident.

During the summer of 2008, [the Giordanos] engaged C.J. Long to repave the driveways and parking areas of the apartment complex. [The Longwells] did not give any direction to C.J. Long regarding leveling of the asphalt and surrounding yard.

[Mr. Longwell] testified that, after the repaving, at least in nice weather, he had traversed the driveway that he traversed the night of the accident. [Mr. Longwell] was familiar with the asphalt and where it started and ended and the grass began and was aware that there was a drop-off.

On a weekend in December, 2008, [the Longwells'] son, Randy, was visiting his parents. Before leaving, Randy wanted to check the oil in his vehicle, and for that purpose, had parked in the turnaround area of the driveways because the location was more level and would enable a more accurate reading.

On the night of December 27th or 28th, 2008, sometime between 6:00 and 8:00 p.m., Randy decided to perform the oil level check. [Mr. Longwell] decided to assist by holding a flashlight to illumi-

Court.

nate the dipstick. Randy and [Mr. Longwell] left the apartment and began walking down the driveway toward Randy's vehicle in the turnaround area. [Mr. Longwell] was carrying a flashlight that he intended to use to provide light for the oil level reading.

[Mr. Longwell] stated that it was "pitch black" when he left the apartment and began his walk down the driveway [and] that he believed there was a hazardous condition, but that he choose to proceed in the darkness.

There were light fixtures at intervals along the driveway. However, the light post on one side of the turnaround, where Randy's vehicle was parked, had been knocked down several years before and never replaced and a light post on the other side of the turnaround had been inoperable for several years. Although the two light fixtures at the turnaround circle were inoperable, they had been in that condition for many years, a condition of which [Mr. Longwell] was aware.

As he walked down the apartment complex's driveway, [Mr. Longwell] turned on the flashlight to illuminate the way, since he wanted to ensure that the flashlight was operable for the purpose of illuminating the dipstick.

At some point, Randy returned to the apartment to retrieve a wrench or pliers. [Mr. Longwell] continued to walk down the driveway and did not check to see whether he was close to the edge of the asphalt. [Mr. Longwell] stated that he thought he had left a "margin of safety" from the driveway's edge, but that he misjudged his position and that his shoe caught on the edge of the asphalt causing him to fall.

[Mr. Longwell] was aware that the difference in elevation was a hazard and dangerous. He thought he knew exactly where the edge of the driveway was, that he thought he had left himself a margin of safety, but that he was wrong. [Mr. Longwell] did not know exactly where he fell but marked the general location on a photo. Randy found his father lying "right on the edge of the blacktop on his side." Randy drew a stick figure on a photo showing where he found his father.

According to [the Longwells'] reference to the deposition testimony, Randy estimated the drop-off as approximately 8 inches.

[Mrs. Longwell] testified, apparently from conversation with a neighbor, that the drop-off at places may have been 7 inches. The drop-off was worse in the driveway. There was not much of a distinction between the surface of the driveway and the grass in the circle area. The difference in elevation was in the driveway.

Trial Court Opinion, 2/8/12, at 5–8 (citations omitted).

The Longwells filed a complaint against the Giordanos, alleging negligence, on May 26, 2010. On November 9, 2010, the Longwells filed an amended complaint also alleging negligence on the part of C.J. Long. On August 12, 2011, the Giordanos and C.J. Long filed motions for summary judgment. In their motion, the Giordanos claimed that Mr. Longwell had assumed the risk of his conduct, and that the Giordanos owed Mr. Longwell no duty of care. In its motion, C.J. Long also argued that it owed no duty to the Longwells, and that the Longwells had failed to produce sufficient evidence that C.J. Long's alleged negligence was the proximate cause of Mr. Longwell's injury. On February 3, 2012, the trial court granted both motions for summary judgment. The Longwells then filed a timely notice of appeal. The trial

court did not order a 1925(b) statement, and none was filed.

■ The Longwells present the following issues for our review:

1. SHOULD THE DOCTRINE OF ASSUMPTION OF THE RISK BE ABOLISHED?

2. ASSUMING THAT ASSUMPTION OF THE RISK IS STILL A VIABLE DEFENSE, DOES THE EVIDENCE SHOW—AT BEST—AN ERROR ON THE PART OF [MR. LONGWELL] RATHER THAN A SUBJECTIVE DECISION TO ENCOUNTER A KNOWN DANGER?

3. DID THE EVIDENCE SHOW THAT THE [GIORDANOS AND C.J. LONG] BREACHED A LEGAL DUTY OWED TO THE [LONGWELLS]?

4. DID THE TRIAL COURT IGNORE OR MISINTERPRET TESTIMONY WHICH SHOWED THAT THERE WERE DISPUTED FACTUAL ISSUES PRECLUDING THE GRANT OF SUMMARY JUDGMENT? [1]

Longwells' brief at 4 (suggested answers omitted).

Our standard of review on an appeal from the grant of a motion for summary judgment is well-settled. A reviewing court may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion. As with all questions of law, our review is plenary.

In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. Pa.R.C.P. 1035.2. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law. Lastly, we will review the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

*ADP, Inc. v. Morrow Motors Inc.*, 969 A.2d 1244, 1246 (Pa.Super.2009) (quoting *Shepard v. Temple University*, 948 A.2d 852, 856 (Pa.Super.2008)).

■ The Longwells first argue that the assumption of the risk doctrine should be abolished. In support of this contention the Longwells cite, *inter alia*, a treatise and various law review articles. Longwells' Brief at 11. It is well-settled that "abolition of the doctrine is not within the

---

1. We provide no analysis on the Longwells' fourth question, because they have failed to provide any argument concerning this question, or even any clear explanation as to what this question is referring. *See J.C.B. v. Pennsylvania State Police*, 35 A.3d 792, 797 (Pa.Super.2012) (observing that undeveloped claims are waived on appeal).

To the extent this question was meant to contest the trial court's handling of the affida-vit of W.R. Cade (which the Longwells do discuss in connection with their third question) we express no opinion as to the authority or admissibility of Mr. Cade's testimony. Because we resolve this case for other reasons, we need not address the appropriateness of the weight placed on this affidavit by the trial court.

purview of this Court's authority," *Montagazzi v. Crisci*, 994 A.2d 626, 635 (Pa.Super.2010), and so we turn next to whether the doctrine was properly applied in the instant case.

The trial court found that "[g]iving [the Longwells] the benefit of every reasonable inference from the evidence, there, nevertheless, is no doubt and no material issue of fact that [Mr. Longwell] voluntarily assumed the risk of injury and that [the Longwells] therefore, are barred from recovery." Trial Court Opinion, 2/8/12, at 16. In addition to granting summary judgment on the basis of assumption of the risk, the trial court also found that "[i]t would follow that a duty to anticipate that [Mr. Longwell] would be harmed despite his knowledge and intentional decision to encounter the known danger, cannot be imposed" on the Giordanos and C.J. Long. Trial Court Opinion, 2/8/12, at 17. We disagree.

We address the Longwells' second and third issues together, as the question of whether the Giordanos owed the Longwells a duty, and the question of whether Mr. Longwell assumed the risk of his conduct, are essentially one and the same:

> In [*Carrender v. Fitterer*, 503 Pa. 178, 469 A.2d 120 (Pa.1983) ], which remains controlling precedent in Pennsylvania, our Supreme Court established that assumption of the risk is, as the trial court explained, a function of the duty analysis:
>
>> Appellee misperceives the relationship between the assumption-of-risk doctrine and the rule that a possessor of land is not liable to his invitees for obvious dangers. When an invitee enters business premises, discovers dangerous conditions which are both obvious and avoidable, and nevertheless proceeds voluntarily to encounter them, the doctrine of assumption of

>> risk operates merely as a counterpart to the possessor's lack of duty to protect the invitee from those risks. By voluntarily proceeding to encounter a known or obvious danger, the invitee is deemed to have agreed to accept the risk and to undertake to look out for himself. It is precisely because the invitee assumes the risk of injury from obvious and avoidable dangers that the possessor owes the invitee no duty to take measures to alleviate those dangers. Thus, to say that the invitee assumed the risk of injury from a known and avoidable danger is simply another way of expressing the lack of any duty on the part of the possessor to protect the invitee against such dangers.

*Montagazzi*, 994 A.2d at 635–36 (quoting *Carrender*, 469 A.2d at 125).

Notably, in reaching its decision, the Court in *Carrender* relied primarily on the duty a possessor of land owes to a business invitee as expressed in the Restatement (Second) of Torts. *Carrender*, 469 A.2d at 123 (quoting the Restatement (Second) of Torts § 343A) ("[A] possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness."). In *Carrender*, the plaintiff slipped in on a patch of ice in the parking lot of defendants' chiropractic clinic. *Id.* at 121–22. The plaintiff admitted that she knew the area where she parked was icy and that there were parking spots nearby that were not icy. *Id.* at 122. Accordingly, our Supreme Court found that the danger faced by plaintiff was known or obvious, and defendants owed her no duty. *Id.* at 123–24.

However, in the present case, Mr. Longwell's status as a tenant of the Giordanos alters the duty of care that is owed.

Pennsylvania courts repeatedly have recognized the validity of the principles set forth in Restatement (Second) of Torts §§ 355–362 governing the liability of lessors to persons who enter upon that land. Section 360 in particular responds to situations in which a person is injured in an area the control of which has been retained by the lessor.

§ 360. Parts of Land Retained in Lessor's Control Which Lessee is Entitled to Use

A possessor of land who leases a part thereof and retains in his own control any other part which the lessee is entitled to use as appurtenant to the part leased to him, is subject to liability to his lessee and others lawfully upon the land with the consent of the lessee or a sublessee for physical harm caused by a dangerous condition upon that part of the land retained in the lessor's control, if the lessor by the exercise of reasonable care could have discovered the condition and the unreasonable risk involved therein and could have made the condition safe.

*Bleam v. Gateway Professional Center*, 431 Pa.Super. 145, 636 A.2d 172, 173–74 (1993) (citations and footnotes omitted). In *Bleam*, this Court faced a situation that was quite similar to *Carrender*. In *Bleam*, the plaintiff also fell in a parking lot that she knew to be icy. *Id.* at 173. However, because the plaintiff in *Bleam* was a tenant of the defendant, this Court found that the trial court had incorrectly relied on Sections 342, 343 and 343A of the Restatement (Second) of Torts in granting a motion for summary judgment. *Id.* at 174. This Court also differentiated the duty owed to the plaintiff in *Bleam* and the plaintiff in *Carrender*.

We do not find [*Carrender* ] to be apposite. Plaintiff Ruth Carrender, a patient/invitee of the defendant-landowners, slipped and fell on a patch of ice in defendants' chiropractic clinic parking lot. In *Carrender*, there was no lessor/lessee relationship between the plaintiff and the landowner, and therefore, § 360 of the Restatement was not involved. Instead, [our S]upreme [C]ourt correctly applied § 343A to hold that the possessors of land did not owe their patient, an invitee, a duty to warn or take precautions against the known or obvious danger of icy parking lot conditions. Section 343A is not applicable here.

*Id.* at 174 n. 4. Reversing the trial court, this Court applied section 360 of the Restatement, including comment b. to that section, which reads:

The rule stated in this Section may also apply even though the person injured, whether he be the lessee himself or a third person, has knowledge of the existence of the dangerous condition. His knowledge may put him in contributory fault[,] ... [b]ut unless the danger is so apparent and so great that it is unreasonable for him to encounter it in view of the purpose of his use, or unless knowing the danger he fails to exercise that caution which a reasonable man would exercise under the same circumstances, **the lessor remains liable to him notwithstanding his knowledge of the existence of the condition.**

*Id.* at 175 (emphasis added).

■ Accordingly, we cannot agree with the trial court that Mr. Longwell assumed the risk of his conduct by voluntarily encountering a known risk when a provision of the Restatement (Second) of Torts, as previously adopted by this Court in *Bleam*,

disavows such a conclusion. Section 360, Illustration 2 of the Restatement further demonstrates why summary judgment is inappropriate in this case:

> A leases an apartment in an apartment house to B. A step upon the common stairway by which the apartment of B as well as that of other tenants is reached, is to the knowledge of B and his family in bad condition but not in such a dangerous condition that a reasonable man would regard it as foolhardy to use the stairway. C, the wife of B, while ascending the stairway and exercising reasonable care to avoid harm from the defective step, slips upon it and is hurt. A is subject to liability to C.

Instantly, we cannot say as a matter of law that a reasonable man would regard it as foolhardy to walk along the Giordanos' driveway at night knowing that the area was poorly lit and that there was a drop-off. Nor can we say as a matter of law that Mr. Longwell failed to exercise reasonable care in his actions prior to his injury. Instead, we conclude that the facts of this case present a genuine issue of material fact that must be resolved by a jury. Thus, we must reverse the order of the trial court granting summary judgment in favor of the Giordanos.[2]

Moreover, we would reach this same conclusion even without applying comment b. of section 360.

> [T]o grant summary judgment on the basis of assumption of the risk it must first be concluded, as a matter of law, that the party consciously appreciated the risk that attended a certain endeavor, assumed the risk of injury by engaging in the endeavor despite the apprecia-

tion of the risk involved, and that the injury sustained was, in fact, the same risk of injury that was appreciated and assumed.

*Bullman v. Giuntoli,* 761 A.2d 566, 573 (Pa.Super.2000).

■ "This [C]ourt has also held that a plaintiff will not be precluded from recovering except where it is *beyond question* that he voluntarily and knowingly proceeded in the face of an obvious and dangerous condition and thereby must be viewed as relieving the defendant of responsibility for his injuries." *Staub v. Toy Factory, Inc.,* 749 A.2d 522, 526 (Pa.Super.2000) (quotation marks and citation omitted, italics in original).

> The standard to be applied is a subjective one, of what the particular plaintiff in fact sees, knows, understands and appreciates. In this it differs from the objective standard which is applied to contributory negligence. (See §§ 464, 289 and 290.) If by reason of age, or lack of information, experience, intelligence, or judgment, the plaintiff does not understand the risk involved in a known situation; he will not be taken to assume the risk, although it may still be found that his conduct is contributory negligence because it does not conform to the community standard of the reasonable man.

*Bullman,* 761 A.2d at 571 (quoting Restatement (Second) of Torts, § 496D, cmt. c.).

In *Barrett v. Fredavid Builders, Inc.,* 454 Pa.Super. 162, 685 A.2d 129 (1996), the plaintiff was injured while performing insulation work at a construction site:

---

**2.** We note that we would reach the same result under the Restatement (Third) of Torts. *See* Restatement (Third) of Torts: Liability for Physical and Emotional Harm (Tentative Draft No. 6) §§ 51 cmt. k, 53(a) ("Thus, the

fact that a dangerous condition is open and obvious bears on the assessment of whether reasonable care was employed, but it does not pretermit the land possessor's liability.").

On the day of the incident, [the plaintiff] proceeded to lot number sixteen to install insulation. When he went into the garage, he observed the vinyl siding, exterior foam board insulation, sheet rock, and plywood. Mr. Barrett cleared a path around the perimeter of the garage so that he could install the insulating materials. He put on his stilts, which are two feet high, and when he almost had completed insulating the garage, he slipped and fell on a small piece of exterior foam board insulation and vinyl siding.

*Id.* at 130. The trial court granted summary judgment to the defendants on the basis of assumption of the risk, and this Court reversed. *Id.* at 129–30. This Court observed that there are two components to the doctrine of assumption of the risk: "[t]he risk must be **perceived**, and the risk must be faced **voluntarily**." *Id.* at 131 (emphasis added). In *Barrett,*

the deposition ... did not establish that [the plaintiff] perceived the specific risk involved and proceeded voluntarily to face that risk. [The plaintiff] **did not see** the piece of vinyl siding insulation which caused him to fall. He stated that he was looking up at his insulation work when the accident occurred. Furthermore, [the plaintiff] took the time to clear a path for himself prior to starting his job. In fact, his actions in cleaning up a path for himself establish that he did not proceed in the face of a *known* risk. From his deposition, it is clear that [the plaintiff] **thought that he was preventing an accident** by clearing a path.

*Id.* (emphasis added, italics in original).

Likewise, in this case, Mr. Longwell's deposition indicates that he knew that the drop-off posed a threat. Deposition of James Longwell, 4/19/2011, at 145. However, he **could not see** the drop-off, and

was mistaken as to where the drop-off was located that night. *Id.* at 34–35. Specifically, Mr. Longwell stated that he thought he left a "margin of safety" between himself and the drop-off, but that he was wrong. *Id.* If anything, Mr. Longwell's testimony indicates that **he subjectively saw himself as avoiding harm,** and not voluntarily encountering a known risk. Therefore, we find that even under assumption of risk principles, the Longwells have produced sufficient evidence to support a finding that there are disputed questions of material fact that must be resolved by a jury.

However, we reach a different conclusion with regard to whether a duty was owed to Mr. Longwell by C.J. Long.

One who on behalf of the possessor of land erects a structure or creates any other condition thereon is subject to liability to others upon or outside of the land for physical harm caused to them by the dangerous character of the structure or condition after his work has been accepted by the possessor, under the same rules as those determining the liability of one who as manufacturer or independent contractor makes a chattel for the use of others.

*Gresik v. PA Partners, L.P.,* 989 A.2d 344, 348 (Pa.Super.2009), *affirmed on other grounds, Gresik v. PA Partners, L.P.,* 33 A.3d 594 (Pa.2011) (quoting Restatement (Second) of Torts § 385).

As the liability of a servant or an independent contractor who erects a structure upon land or otherwise changes its physical condition is determined by the same rules as those which determine the liability of a manufacturer of a chattel, it follows that such a servant or contractor who turns over the land with knowledge that his work has made it dangerous **in a manner unlikely to be discovered by the possessor** is subject to liability both

to the possessor, and to those who come upon the land with the consent of the possessor or who are likely to be in its vicinity.

*Id.* at 350 (quoting Restatement (Second) of Torts § 385 cmt. c.) (emphasis added). In *Gresik,* this Court analyzed section 385 of the Restatement (Second) of Torts in the context of a tragic accident at a steel mill. This Court applied comment c. to section 385, and expressly declined to follow the Pennsylvania Commonwealth Court's reasoning in *Gilbert v. Consolidated Rail Corp.,* 154 Pa.Cmwlth. 249, 623 A.2d 873, 875 (1993), which held that "comment (c) provides for potential liability to third persons and the possessor of the property when the condition may be considered a latent defect." *Id.* at 350. Instead, this Court embraced the interpretation urged by the dissent in *Gilbert,* and held that "as a precondition for establishing liability under Section 385, a plaintiff must show that the danger was one unlikely to be discovered by the possessor or those who come upon the land with the possessor's consent." *Id.* at 350–51. Our Supreme Court affirmed this decision on other grounds, and never reached the question of how to interpret the relevant language of comment c. to section 385. *Gresik,* 33 A.3d at 600.

■ Applying our reasoning in *Gresik* to the instant case, it cannot be said that C.J. Long made the area of the drop-off dangerous in a way that the Giordanos were unlikely to discover. The Longwells have made no argument to this effect, and indeed, point out that Mr. Giordano was apparently aware that there was a drop-off, both before and after C.J. Long was hired to add an additional coating of blacktop. Longwells' Brief at 5–6. Accordingly, we find that the trial court did not err in holding that C.J. Long owed no duty to the Longwells and affirm the order of the trial court granting summary judgment in favor of C.J. Long.

Order reversed in part and affirmed in part. Case remanded for further proceedings consistent with this opinion. Jurisdiction relinquished.