IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Laura Palenscar,                         :
                    Appellant           :
                                        :
            v.                           :    No. 1114 C.D. 2022
                                        :    Argued: October 10, 2023
Glencannon Homes Association,            :
Inc., t/d/b/a Glencannon Homes          :
Association, Foxchase Community          :
Association, Inc. t/d/b/a Foxchase       :
Community Association, and Fox           :
Chase Homeowner's Association            :

BEFORE:    HONORABLE ANNE E. COVEY, Judge
           HONORABLE LORI A. DUMAS, Judge
           HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE DUMAS                                    FILED: January 9, 2024

        Laura Palenscar (Plaintiff) appeals from the order entered by the Court

of Common Pleas of Washington County (trial court), which granted the motions for

summary judgment filed by Glencannon Homes Association, Inc., trading and doing

business as Glencannon Homes Association (Glencannon), Foxchase Community

Association, Inc., trading and doing business as Foxchase Community Association,

and Fox Chase Homeowner's Association (Foxchase) (collectively, Defendants).

Plaintiff challenges the trial court's reasoning in granting summary judgment.

Glencannon also filed a motion to dismiss in this Court. We deny Glencannon's

motion to dismiss and affirm the trial court's order granting summary judgment.

## I. BACKGROUND[1]

        In November 2019, Plaintiff participated in a five-kilometer walk/run

---

[1] We state the facts in the light most favorable to Plaintiff as the non-moving party. *Scarnati v. Wolf*, 173 A.3d 1110, 1118 (Pa. 2017).

(event) that the parties variously referred to as a "Foxchase Foxtrot" or "Turkey Trot." Notes of Testimony (N.T.) Pl.'s Dep. at 15, attached as Ex. A to Pl.'s Br. in Opp'n to Mot. for Summ. J., 2/14/22.[2] The event began around 8:30 a.m. Ex. A to N.T. Pl.'s Dep. The event's route passed through Glencannon's private property, which was publicly accessible, not fenced, and had no posted signage.

On Glencannon's private property is a partially exposed, corrugated steel pipe painted bright blue. *See, e.g.*, Ex. D to Pl.'s Br. in Opp'n to Mot. for Summ. J.; Ex. 2 to Ex. E to Foxchase's Mot. for Summ. J. The pipe is about 24 feet long, has a 2-foot diameter, and lies in a ditch. Pl.'s Br. in Opp'n to Mot. for Summ. J. at 2 (unpaginated). From Plaintiff's perspective, the pipe was oriented perpendicular to her path of travel, so the exposed area of the pipe was roughly 3 feet wide and 2 feet in depth (the pipe is 2 feet in diameter). *See id.*

The route for the event consisted of two laps. For each lap, an event participant would have to traverse the exposed pipe, as opposed to the adjacent brush or pond. N.T. Pl.'s Dep., 11/11/21, at 49; *see also* N.T. Kerri Maravich Dep., 11/12/21, at 71 (describing the pipe as lying between brush and marsh).[3] The pipe was not covered with leaves. N.T. Pl.'s Dep. at 44.

Prior to the event, Plaintiff had not previously been to Glencannon's property. *Id.* at 43-44. Plaintiff successfully completed the first lap without incident. *Id.* at 37. Plaintiff testified that she did not recall crossing the pipe during the first lap, including whether her foot touched the pipe. *Id.* at 38, 40, 43. Plaintiff also did

---

[2] The event was not a race. Indeed, Plaintiff did not sign any releases or waivers. N.T. Pl.'s Dep. at 66. For court documents, we refer to the Pa.R.Civ.P. notice dates and not necessarily the docketing dates.

[3] Plaintiff described the pond as "immediately to the left" of the pipe. N.T. Pl.'s Dep. at 49. We note that the parties attached various photographs of the area surrounding the pipe to their pleadings. Although the photographs lacked appropriate scale measurements, the pond appears to be some distance away from the pipe, as opposed to "immediately" adjacent to the pipe.

not recall going around the pipe (through the adjacent brush or marsh) during the first lap. *Id.* at 48.

On the second lap, Plaintiff was either walking quickly or jogging when she again encountered the pipe, which she described as slippery and wet. *Id.* at 38, 41. She noted that the ground had a "dusting" of snow. *Id.* at 51. At that time, Plaintiff was with other event participants but denied being distracted as she was "pretty [focused] on where [they] were going and following the pack and kind of looking at [her] surroundings." *Id.* at 42, 43-44. Plaintiff did not see anyone ahead of her "almost fall" while traversing the pipe. *Id.* at 43. Plaintiff explained that as she placed her right foot on the pipe, she slipped, fell, landed on the pipe, and fractured her wrist. *Id.* at 38, 45-46.

Plaintiff admitted that it felt dangerous to cross the pipe. *Id.* at 49. She nonetheless attempted to cross the pipe because she was following the pack, *i.e.*, running group. *Id.* Plaintiff acknowledged that she had previously walked on "metal surfaces or grates" during the winter, and such surfaces could be slippery in the winter. *Id.* at 111.

Plaintiff sued Defendants for negligence, alleging that she was a business invitee. Compl. ¶¶ 21, 29. Defendants filed crossclaims in the nature of indemnity and contribution against each other. Defendants successfully moved for summary judgment adverse to Plaintiff.

In support of its grant of summary judgment adverse to Plaintiff, the trial court reasoned as follows. The court noted Plaintiff's testimony acknowledging that crossing the pipe was dangerous. Trial Ct. Op., 7/6/22, at 7. Although Plaintiff also testified that she was unable to "go around the pipe" because of other natural obstacles, the court emphasized that her testimony "overlook[ed]" her decision to take "*another lap* around Glencannon's pond." *Id.* at 5 (emphasis in original). The

3

court pointed out that because Plaintiff recognized that crossing the pipe was dangerous, she "could have chosen *not to do that portion*" of the second lap. *Id.* (emphasis in original). Thus, the trial court reasoned, despite appreciating the danger posed by traversing the pipe, Plaintiff's decision to proceed over the pipe a *second* time bars recovery. *Id.* at 5-6. The trial court concluded that under the circumstances, it did not have to resolve whether Plaintiff was a licensee or invitee on Glencannon's property. *Id.* at 6-8. Subsequently, Plaintiff praeciped for entry of final judgment.[4] Plaintiff timely appealed and timely filed a court-ordered Pa.R.A.P. 1925(b) statement.[5]

In this Court, Glencannon filed a motion to dismiss Plaintiff's appeal, reasoning as follows. First, Plaintiff's Rule 1925(b) statement is vague and lengthy. Glencannon's Br. in Supp. of its Mot. to Dismiss, 4/14/23, at 5-6. Second, the argument presented in Plaintiff's brief does not fall within the scope of the "Statement of Questions Involved" section of her brief, thus violating Pa.R.A.P. 2116(a). *Id.* at 6-8. Third, the issue of Plaintiff's status as licensee, invitee, or trespasser is "moot" because the trial court did not grant summary judgment based upon Plaintiff's status. *Id.* at 9-11.

We deny Glencannon's motion to dismiss. First, the trial court did not find Rule 1925(b) waiver and was able to glean the issues from Plaintiff's statement. *See generally Commonwealth v. Laboy*, 936 A.2d 1058, 1059 (Pa. 2007) (*per*

_____

[4] Although the trial court did not formally resolve the derivative crossclaims between Defendants, we accept that the trial court's praecipe for entry of judgment resolved all outstanding claims with finality.

[5] Plaintiff's notice of appeal was from the entry of judgment. Plaintiff's notice of appeal, however, was also filed within thirty days of the trial court's order granting summary judgment.

Atypically, the trial court ordered Plaintiff to file her Rule 1925(b) statement by a date certain, which exceeded the 21-day minimum at Pa.R.A.P. 1925(b)(2)(i). Plaintiff timely complied. The trial court filed a responsive Rule 1925(a) decision incorporating its prior decision granting summary judgment. The trial court added that, in its view, Plaintiff had filed a lengthy and vague Rule 1925(b) statement. Trial Ct. Op., 9/30/22, at 2 (unpaginated).

*curiam*).  Second, even assuming Plaintiff's brief violates Rule 2116(a), we exercise our discretion to disregard any such violation under Rule 105(a).  *See* Pa.R.A.P. 105(a).[6]  We add that Plaintiff's appellate brief does not violate the rules to such an extent that we should dismiss the appeal.  *See* Pa.R.A.P. 2101.[7]

Finally, Glencannon misapprehends mootness.  Briefly, courts "will not decide moot questions where there exists no actual case or controversy.  A question is moot unless it involves a legal controversy that is real and not hypothetical, and it affects an individual in a concrete manner so as to provide the factual predicate for a reasoned adjudication."  *McGuire ex rel. Neidig v. City of Pittsburgh*, 285 A.3d 887, 896 (Pa. 2022).  Glencannon argues that we should find appellate waiver based on Plaintiff's apparent failure to amend her complaint to conform to undisputed evidence.  But because Pennsylvania is a fact-pleading jurisdiction, we decline to grant relief to Glencannon on this basis.  *See generally Briggs v. Sw. Energy Prod. Co.*, 224 A.3d 334, 351 (Pa. 2020).  We next discuss Plaintiff's issue.

## II. ISSUE[8]

Plaintiff contends that a "genuine issue of material fact exists

---

[6] Rule 105(a) provides that "an appellate court may . . . disregard the requirements or provisions of any of these rules in a particular case . . . on its own motion . . . ."  Pa.R.A.P. 105(a).

[7] Rule 2101 states that appellate briefs "shall conform in all material respects with the requirements of these rules as nearly as the circumstances of the particular case will admit, otherwise they may be suppressed, and, if the defects are in the brief or reproduced record of the appellant and are substantial, the appeal or other matter may be quashed or dismissed."  Pa.R.A.P. 2101.

[8] Although Plaintiff identifies a single issue, her brief violates Pa.R.A.P. 2119(a), which requires that the argument section of her brief "be divided into as many parts as there are questions to be argued . . . ."  *See* Pa.R.A.P. 2119(a); *see also* Pa.R.A.P. 2101.  As noted herein, we decline to dismiss Plaintiff's appeal for violating the Rules of Appellate Procedure although "we reiterate that compliance with these rules by appellate advocates who have any business before our Court is mandatory."  *Commonwealth v. Briggs*, 12 A.3d 291, 343 (Pa. 2011) (noting that the "briefing requirements scrupulously delineated in our appellate rules are not mere trifling matters of stylistic preference; rather, they represent a studied determination by our Court and its rules committee of the most efficacious manner by which appellate review may be conducted").

5

concerning whether the dangerous, exposed steel pipe was a known and obvious condition" such that Defendants owed her a duty of care. Pl.'s Br. at 7.

### III. DISCUSSION[9]

In support, Plaintiff argues that Foxchase owed her a duty of care because she was a licensee such that the trial court should have denied summary judgment.[10] *Id.* at 15. Plaintiff reasons that Foxchase "organized, sponsored, or promoted" the event and that a Foxchase member invited her to participate. Pl.'s Br. at 15-16. Plaintiff maintains that Foxchase had a duty to use reasonable care in organizing and promoting the event. *Id.* at 16. In Plaintiff's view, she established three necessary elements. *Id.* at 16-20. First, Foxchase knew of the exposed pipe and realized it involved an unreasonable risk of harm to her. *Id.* Second, Foxchase failed to exercise reasonable care to correct the exposed pipe or warn her. *Id.* Third, Plaintiff did not know or have reason to know of the exposed pipe and the risk involved in traversing the pipe. *Id.* Plaintiff concludes that "a genuine issue of material fact exists [as] to whether [Foxchase] owed [her] a duty of care as a licensee . . . ." *Id.* at 20.

Plaintiff argues that Glencannon likewise owed her a duty of care as a

---

[9] "In reviewing a grant of summary judgment, this Court's standard of review is *de novo* and our scope of review is plenary." *Bourgeois v. Snow Time, Inc.*, 242 A.3d 637, 649 (Pa. 2020) (citation omitted). In resolving "a motion for summary judgment, the trial court must take all facts of record and reasonable inferences therefrom in a light most favorable to the non-moving party and must resolve all doubts as to the existence of a genuine issue of material fact against the moving party." *Maas v. UPMC Presbyterian Shadyside*, 234 A.3d 427, 436 (Pa. 2020) (citation omitted). Critically, "the existence of a duty is a question of law, while the issue of whether the defendant breached that duty is generally for the fact-finder." *Id.* Because the existence of a duty owed to a plaintiff is a question of law, our standard of review is also *de novo*. *Id.* Thus, we reverse an order granting summary judgment only for an abuse of discretion or error of law. *Charlie v. Erie Ins. Exch.*, 100 A.3d 244, 250 (Pa. Super. 2014).

[10] Plaintiff did not explicitly explain why she shifted her legal position from asserting she was a business invitee to asserting she was a licensee of Defendants. We may infer that following discovery, Plaintiff believed the record only established the latter.

6

licensee. *Id.* at 21. Plaintiff maintains that she presented evidence that it was "local custom for individuals to traverse the" place where Plaintiff's injury occurred. *Id.* at 22. Plaintiff insists "there is a genuine issue of material fact" as to the existence of a local custom that would give "rise to the level of duty and care" owed by Defendants. *Id.* at 23. Plaintiff contends Glencannon knew or should have known about the pipe and that it posed an unreasonable risk of harm. *Id.* at 23-24. Thus, per Plaintiff, Glencannon should have taken appropriate safety measures. *Id.* at 24.

Finally, Plaintiff assails the trial court's reasoning. *Id.* at 25. In Plaintiff's view, the trial court opined that because she knew about the pipe, it did not matter whether she was a licensee or invitee. *Id.* at 25. Plaintiff reiterates she was a licensee. *Id.* at 26. She further argues that she identified sufficient genuine issues of material fact as to Defendants' negligence. *Id.* at 27-29 (summarizing the evidence and discussing, *inter alia*, *Longwell v. Giordano*, 57 A.3d 163 (Pa. Super. 2012)).[11]

---

[11] In response, Glencannon counters that even if Plaintiff was owed the highest duty of care as a business invitee, the "open and obvious doctrine bars her recovery." Glencannon's Br. at 12. Per Glencannon, Plaintiff "*admitted* she knew and appreciated the condition of the open and obvious metal pipe before crossing it for a *second* time, when" she injured herself. *Id.* (emphases in original). Glencannon asserts the trial court did not rule on Plaintiff's status as invitee, licensee, or trespasser given Plaintiff's prior knowledge of the pipe. *Id.*

Regardless of whether Plaintiff is a licensee or invitee, Glencannon argues that it owed no duty to her. *Id.* at 13. In support, Glencannon reasons that the "duty owed to a licensee is less than the duty owed to an invitee," *i.e.*, it did not have to warn a licensee of a known and obvious danger. *Id.* at 14-15 (citing, *inter alia*, *Lewis v. Duquesne Inclined Plane Co.*, 28 A.2d 925 (Pa. 1942)). But if Plaintiff is an invitee, Glencannon asserts that Plaintiff must prove that Glencannon (1) knew or should have discovered the dangerous condition and that the condition poses an unreasonable risk of harm to an invitee; (2) should have expected the invitee to not discover the danger; and (3) failed to exercise reasonable care to protect the invitee. *Id.* at 16. In Glencannon's view, however, it would only have a duty to notify Plaintiff of the dangerous condition. *Id.* at 16-17. Glencannon concludes that because Plaintiff knew of the open and obvious pipe, *i.e.*, the dangerous condition, Glencannon is not liable. *Id.* at 18.

Foxchase mirrors Glencannon's arguments. Foxchase's Br. at 6-7. Foxchase similarly argues that Plaintiff failed to produce any evidence that Foxchase "organized, sponsored, or acted

A negligence claim resolves "whether the wrongdoer could have anticipated and foreseen the likelihood of harm to the injured person, resulting from" the wrongdoer's action or inaction. *Charlie*, 100 A.3d at 250 (cleaned up). An injured person therefore must establish the alleged wrongdoer's "duty, a breach of that duty, a causal relationship between the breach and the resulting injury, and actual loss." *Id.* (cleaned up). "A duty arises only when one engages in conduct which foreseeably creates an unreasonable risk of harm to others." *Id.* (cleaned up).

A landowner may have a duty to entrants on the land. *Carrender v. Fitterer*, 469 A.2d 120, 123 (Pa. 1983); *accord Brewington v. City of Phila.*, 199 A.3d 348, 355 n.3 (Pa. 2018). A landowner's duty varies depending on whether the person entering on the land "is a trespasser, licensee, or invitee."[12] *Brewington*, 199 A.3d at 355 n.3; *Carrender*, 469 A.2d at 123.

"The duty owed to a business invitee is the highest duty owed to any entrant upon land. The landowner is under an affirmative duty to protect a business visitor not only against known dangers but also against those which might be

---

as a benefactor or promoter" of the event. *Id.* at 8. Foxchase acknowledges that the event was promoted in its newsletter but denies sponsoring it. *Id.* at 9. Foxchase argues it owed no duty to Plaintiff because she was not a member of Foxchase or owned a home in the neighborhood. *Id.* at 10. In Foxchase's view, it had no duty or obligation to inspect a pipe on Glencannon's property. *Id.*

[12] A trespasser is "a person who enters or remains upon land in the possession of another without a privilege to do so created by the possessor's consent or otherwise." *Ott v. Unclaimed Freight Co.*, 577 A.2d 894, 896 (Pa. Super. 1990) (cleaned up). "A licensee is a person whose entry upon or use of the premises in question is by express or implied permission of the owner or occupier. A licensee enters upon the land of another solely for his own purposes; the invitation extended to him is given as a favor by express consent or by general or local custom, and is not for either the business or social purposes of the possessor." *Charlie*, 100 A.3d at 253 (cleaned up). There are two types of invitees: public and business. *Ott*, 577 A.2d at 896. "A public invitee is a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public." *Id.* (citation omitted). "A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with the business dealings with the possessor of the land." *Id.* (citation omitted); *Charlie*, 100 A.3d at 253.

8

discovered with reasonable care." *Charlie*, 100 A.3d at 253 (cleaned up). But "a possessor of land is not liable to [its] invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." *Carrender*, 469 A.2d at 123 (cleaned up). The *Carrender* Court defined "known" and "obvious" as follows. "For a danger to be 'known,' it must not only be known to exist, but also be recognized that it is dangerous and the probability and gravity of the threatened harm must be appreciated." *Id.* at 124 (cleaned up). Similarly, a danger is "obvious" when "both the condition and the risk are apparent to and would be recognized by a reasonable [person], in the position of the visitor, exercising normal perception, intelligence, and judgment." *Id.* (cleaned up).[13]

For example, in *Ott*, the Court addressed the trial court's grant of summary judgment adverse to the plaintiff. *Ott*, 577 A.2d at 894.[14] In that case, the plaintiff was injured while taking a shortcut through the defendants' privately owned, leased snow-and-ice-covered parking lot. *Id.* at 895. The plaintiff had testified at deposition that she knew ice was slippery and that she could slip and fall on the ice. *Id.* at 899. She "stated that although an alternative route was available, she chose to cross the parking lot because she felt that it was shorter." *Id.* The Superior Court reasoned that the defendants owed no duty to the plaintiff "either a

---

[13] Thus, when a business invitee "discovers dangerous conditions which are both obvious and avoidable, and nevertheless proceeds voluntarily to encounter them, the doctrine of assumption of risk operates merely as a counterpart to the [landowner's] lack of duty to protect the invitee from those risks." *Carrender*, 469 A.2d at 125 (citations omitted). In other words, holding that a business "invitee assumed the risk of injury from a known and avoidable danger is simply another way of expressing the lack of any duty on the part of the possessor to protect the invitee against such dangers." *Id.* (citation omitted).

[14] We may cite to Superior Court cases for their persuasive value. *Marshall v. Se. Pa. Transp. Auth.*, 300 A.3d 537, 541 n.2 (Pa. Cmwlth. 2023).

9

trespasser or licensee because the condition of the lot was readily apparent and an alternative route was easily available." *Ott*, 577 A.2d at 899. Because the plaintiff "fully understood that she could fall on the ice and sustain injury," the *Ott* Court affirmed the trial court's grant of summary judgment adverse to the plaintiff. *Id.*

In *Lewis*, the plaintiff tripped and fell while exiting a funicular, which had uncommonly stopped a few inches below the station platform. *Lewis*, 28 A.2d at 926. Several passengers, however, had exited ahead of the plaintiff without incident. *Id.* The plaintiff conceded that the lighting was adequate but excused her failure to look because of "shadows and other passengers." *Id.* The *Lewis* Court stated that if the plaintiff had looked it would have been "obvious" to see the condition of the exit. *Id.* Our Supreme Court thus affirmed compulsory nonsuit, reasoning that "it is the duty of a person to look where he is walking and see that which is obvious" and that the presence of other passengers exiting ahead of the plaintiff did not "justify one in blindly following them into danger." *Id.*[15]

Although not involving a directed verdict in *Lewis* or a summary judgment in *Ott*, our Supreme Court also addressed facts analogous to those in *Lewis*. *Atkins v. Urban Redevelopment Auth. of Pittsburgh*, 414 A.2d 100 (Pa. 1980). In *Atkins*, in a house scheduled for demolition, the plaintiff fell down some stairs because a step was missing. *Id.* at 102. Like in *Lewis*, the stairwell was well-lit, and the plaintiff admitted that "if he had looked, he would have been able to see that the second step was missing." *Id.* at 103. The Court affirmed the entry of judgment notwithstanding the verdict, reasoning that the pertinent defendant owed no duty to the plaintiff because he should have discovered the dangerous condition. *Id.* at 104-05. Because the defendant owed no duty, there was no negligence. *Id.* at 105 n.7.

_____

[15] Subsequently, the Superior Court narrowed the duty by holding that it would not hold a pedestrian responsible for "walking so tentatively as to detect nearly-latent defects." *Donlin v. J.J. Newberry Co.*, 466 A.2d 174, 176 (Pa. Super. 1983).

Instantly, we address whether Plaintiff voluntarily and knowingly traversed the pipe on her second lap of the course despite acknowledging the open and dangerous nature of the pipe. Initially, no party cited jurisprudence resolving whether a person participating in an event through publicly accessible, private property is a trespasser, licensee, or invitee. *See generally Brewington*, 199 A.3d at 355 n.3; *Carrender*, 469 A.2d at 123. We need not definitively resolve Plaintiff's status because we agree with the trial court's reasoning that even after viewing the record in her favor, Defendants owed no duty to Plaintiff.

Assuming Plaintiff was a business invitee, then Defendants would be "under an affirmative duty to protect [Plaintiff] not only against known dangers but also against those which might be discovered with reasonable care." *See Charlie*, 100 A.3d at 253. But Defendants would not have any such duty if Plaintiff discovers a known, obvious, and avoidable danger but nonetheless voluntarily encounters it. *See Carrender*, 469 A.2d at 125. Here, Plaintiff acknowledged the dangerous condition of the open and obvious pipe, including that the pipe was slippery and wet. *See, e.g.*, N.T. Pl.'s Dep. at 38-39 (testifying that she assumed the pipe was wet because of the "dewy morning"), 41, 49. Further, she knew that metal surfaces in the winter could be slippery. *See, e.g.*, *id.* at 111. Finally, this was not her first encounter with the pipe. *See, e.g.*, *id.* at 37. Nevertheless, upon encountering the pipe on her *second* lap, Plaintiff affirmatively decided to move forward, which resulted in her slipping, falling, and fracturing her wrist. *See, e.g.*, *id.* at 49. To paraphrase our Supreme Court, Plaintiff discovered a known, obvious, and avoidable danger but nonetheless proceeded to voluntarily encounter it. *See Carrender*, 469 A.2d at 125.

This case is also akin to *Ott*, in which the victim, despite being aware of an alternative route, chose to proceed on her chosen path despite fully

11

understanding she could slip and fall on the ice. *Cf. Ott*, 577 A.2d at 899. Like *Ott*, Plaintiff did not have to proceed with traversing the pipe but did so despite understanding she could slip and fall on the pipe. *See id.* Further, in *Lewis* and *Atkins*, if the victims had affirmatively looked, they would have seen the obvious danger. *Cf. Lewis*, 28 A.2d at 926; *Atkins*, 414 A.2d at 104-05.[16] Unlike the plaintiffs in those cases, not only did Plaintiff see the obvious pipe, but Plaintiff had also previously traversed the pipe. In summary, even after viewing the record in Plaintiff's favor, we agree with the trial court that as a matter of law, Defendants owed her no duty because Plaintiff discovered the known, obvious, and avoidable pipe but voluntarily traversed it a second time.[17]

## IV. CONCLUSION

For these reasons, we deny Glencannon's motion to dismiss and affirm the trial court's order granting summary judgment adverse to Plaintiff.

_____
LORI A. DUMAS, Judge

Judge Fizzano Cannon did not participate in this decision.

---

[16] Although summary judgment was not at issue in *Lewis* and *Atkins*, our Supreme Court affirmed entry of a directed verdict and judgment notwithstanding the verdict.

[17] *Longwell* is factually inapt and does not bind this Court. *See Maloney v. Valley Med. Facilities, Inc.*, 984 A.2d 478, 485-86 (Pa. 2009); *Marshall*, 300 A.3d at 541 n.2. *Longwell* involved the duties owed by the defendant-landlord and the landlord's contractor to the plaintiff-tenant. *Longwood*, 57 A.3d at 164. No such relationships exist instantly. Furthermore, *Longwell* was abrogated by our Supreme Court. *See Brown v. City of Oil City*, 294 A.3d 413, 435 (Pa. 2023). To be clear: neither Glencannon, as landowner, nor Foxchase, as organizer, owed Plaintiff a duty.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Laura Palenscar,                                    :
                          Appellant                 :
                                                    :
          v.                                        :     No. 1114 C.D. 2022
                                                    :
Glencannon Homes Association,                       :
Inc., t/d/b/a Glencannon Homes                      :
Association, Foxchase Community                     :
Association, Inc. t/d/b/a Foxchase                  :
Community Association, and Fox                      :
Chase Homeowner's Association                       :

# **O R D E R**

AND NOW, this 9th day of January, 2024, we DENY the motion to dismiss filed by Glencannon Homes Association, trading and doing business as Glencannon Homes Association. We AFFIRM the judgment entered by the Court of Common Pleas of Washington County adverse to Laura Palenscar.

_____
LORI A. DUMAS, Judge